CATHERINE NICHOLSON, Administratrix of JAMES NICHOLSON, deceased, Respondent, *v.* THE ERIE RAILWAY COMPANY, Appellant.

The defendant, a railroad company, has a branch track running from its main track across and into the premises of an iron company, which branch track was used principally for the accommodation of the latter company, in supplying coal to their works, and which track was owned jointly by the defendant and the iron company. Persons living in the vicinity, on one side of this branch track, were in the habit of crossing it on the premises of the iron company, without objection by either the defendant, or such iron company. On a day, when an unusually high wind was blowing in a general direction from the iron works down this branch track, toward its junction with the main track, and it was raining, several coal cars, a part empty and a part loaded, were standing in the yard of the iron company, on the branch track. On that day, the plaintiff's intestate, who had been in the employment of the iron works shortly before, and who, as well as other employees of that company, had been in the habit of crossing the branch track at a certain point, on the premises of the company, without objection, in going to and returning from his home, approached that crossing, with his hands up to his hat, which he held down to shield his face and ward off the storm. At the moment of crossing the branch track, he was struck, run over and killed, by the coal cars, which had been started by the violent wind. The brakes on some of the cars were not set, although it appeared that it was the custom to set them when left standing on the track. It appeared that the deceased could have

seen the cars approaching if he had looked, as they were but two feet from him, when he stepped upon the crossing, and were seen by other persons.

In an action against the railroad company, brought by his administratrix to recover damages for his death,—*Held* (HUNT and FOSTER, JJ., *contra*), that it was error to charge the jury, that it was the duty of the defendant to set the brakes, or otherwise fasten the cars when they were left by it in the yard of the iron company, and that if they omitted to do so, it was a violation of duty on their part.

The negligence of the deceased in approaching and stepping upon the track during a high wind, with his hat over his face, and without looking up the track, was negligence which prevented a recovery. (LOTT and GROVER, JJ.)

(Cause argued in 1869, and a re-argument ordered; re-argued January 6th, 1870, and decided March 20th, 1870.)

APPEAL from a judgment of the General Term of the Supreme Court, in the eighth judicial district, affirming a judgment awarded for the plaintiff.

This is an action to recover damages for a personal injury to the plaintiff's husband, resulting in his death. The complaint states the cause of action as follows:

"While James Nicholson, the deceased, was traveling upon a public highway, and lawfully crossing the defendant's railroad track, the defendant and its servants so carelessly and negligently managed and conducted certain of the defendant's cars upon such track, that such cars were with great force and violence run upon and against the said James Nicholson, and then and there caused his death; and that such death was caused solely by such wrongful act of the defendant, and not by any carelessness or negligence on the part of said James Nicholson."

The case as made by the proof at the circuit, shows that the defendant, near the eastern limits of the city of Buffalo, had constructed, and had in use, a side track of about 1,500 feet in length, designed for the particular accommodation of a company, called the Buffalo Iron Company, which had blast furnaces and other iron works in use, contiguous to, and between said railroad and Buffalo creek, which company own the land on which said track was constructed. Said

branch track was owned jointly by the said Union Iron Works and the defendant; that the cars which run upon it belonged to the defendant; and the said branch track was erected and operated by said company for the transportation of coal to said iron works, and to take iron from said works, and was used for no other purpose; that the coal is unloaded from about 300 feet from the junction for the whole of the balance of the track; that the Buffalo Iron Works Company have the unloading of the cars, though in several instances it is done by defendant; that on the day of the accident there stood on this branch track five cars; four empty ones, placed there loaded with coal, a day or two before the accident, and one still loaded with coal placed there shortly before the accident, and standing from thirty to forty feet from the hinge of the switch on the branch track where it connected with the main track before the accident. That the four empty cars, the brakes to the same not being set or secured, were started by a sudden violent gale of wind, and ran against the loaded car, and propelled it forward toward the main track, causing it to run against or on to Nicholson as he was crossing the branch track. The place where this branch track was constructed was open and unfenced, except that the premises of the Union Company were fenced on one side; and said track was customarily used by the people living in that vicinity, as they had occasion, and without objection on the part of the defendant, or the said Buffalo Iron Company. The deceased approached the track with his right hand up to his hat, which he held down to shield his face and ward off the storm. It was raining as well as blowing at the time. As the deceased stepped upon the branch track the cars were about two feet from him. They immediately passed over his body and killed him.

The judge at the circuit, among other things, instructed the jury, that the only ground on which the plaintiff could predicate a claim of negligence in the case on the part of the defendant, was an omission to properly secure the cars left in the yard of the Buffalo iron works. That it was the duty

of the defendant to set the brakes, or otherwise fasten the cars when they were left in the yard of the Buffalo iron works. That after so doing, the responsibility rested on the Buffalo iron works, and not on the defendant. And the court also instructed the jury, that if the defendant left the cars without setting the brakes, or otherwise securing them, it was a violation of duty on its part. To this instruction in the charge the defendant's counsel duly excepted.

The jury rendered a verdict for $1,800, upon which judgment was rendered, which was affirmed at General Term in the eighth district.

*John Ganson*, for the appellant, cited *Butterfield* v. *Western R. R. Co.* (10 Allen, 532); *Curran* v. *Chemical Co.* (34 How., 250); *Burke* v. *Seventh Av. R. R.* (Id., 239); *Owen* v. *Hudson R. R. R. Co.* (35 N. Y.); *Button* v. *Hudson R. R. Co.* (18 N. Y. R., 248, 253); *Steves* v. *Oswego R. R. Co.* (18 N. Y. R., 422, 425); *Johnson* v. *Hudson R. R. Co.* (20 N. Y. R., 65); *Wild* v. *The same* (29 N. Y. R., 315); *Dascomb* v. *State Line R. R. Co.* (27 Barb., 121); *Sheffield* v. *Rochester R. R. Co.* (21 Barb., 339); *Stubley* v. *London & N. W. R. R. Co.* (1 Law Rep. Exchequer, 13); *Munger* v. *Tonawanda R. R. Co.* (5 Den., 255, 264); *Hawkins* v. *Shipman* (5 B. & C., 221); *Dexter* v. *Hazen* (10 John., 246); *Bolch* v. *Smith* (7 Hurl. & Norm., 932); *Hounsell* v. *Smyth* (97 Eng. C. L. R., 730); *Corby* v. *Hill* (Eng. Com. Law, vol. 93, p. 556); *Chapman* v. *Rothwell* (Eng. Com. Law, vol. 96, p. 168); *Indermaur* v. *Dames* (1 vol. Law Reports of 1865–66, p. 274, Common Pleas); the same case on appeal in the Exchequer Chamber, 2 vol. Court of Common Pleas Law Reports of 1866–67, p. 311; *Southcote* v. *Stanley* (1 Hurlstone & Norman's Report's, 247); *Gautret* v. *Egerton* (Law Report, vol. 2 of Court of Common Pleas, 370).

*E. C. Sprague*, for the respondent, cited *Hagar* v. *Danforth* (20th Bar., 16); *Adams* v. *Freeman* (12 J. R., 408); *Van Buskirk* v. *Irving* (7 Cowen, 35); *Water* v. *Post* (6 Duer., 363); *Race* v. *Ward* (4 Ellis & Blackburn, 702); *Driscoll* v.

*Newark Cement Co.* (5 Transcript Appeals, 82); *Gordon* v. *Grand Street R. R. Co.* (40 Barb., 546); *Wolfkiel* v. *Sixth Av. R.* (5 Trans. Appls., 219); *Cook* v. *N. Y. C. R. R.* (3 Trans. Appls., 8); *Sheridan* v. *Brooklyn City R. R.* (36 N. Y., 39); *Mackay* v. *N. Y. C. R. R.* (35 N. Y., 75); *McIntyre* v. *N. Y. C. R. R.* (37 N. Y., 287); *Beisiegel* v. *N. Y. C. R. R. Co.* (34 N. Y. R., 622); *Penn. R. Co.* v. *Ogier* (35 Penn. R., 160); *Warren* v. *Fitchburg R. R. Co.* (8 Allen, 227); *Ernst* v. *Hudson R. R. Co.* (35 N. Y. R., 20); *Rennick* v. *N. Y. C. R. Co.* (36 N. Y. R., 132).

E. DARWIN SMITH, J. The right of action in this case must rest upon the grounds upon which it was put by the circuit judge in his charge to the jury; that is, upon the ground of an omission on its part properly to secure the cars left in the yard of the Buffalo iron works. The charge directs the jury that it was the duty of the defendant to set the brakes or otherwise fasten the cars, when they were left by it in the said yard of the Buffalo iron works.

No act of omission or of affirmative misfeasance, fault or wrong is proved or pretended, although a recovery might have been had upon the allegation of the complaint, upon this branch of the law of negligence.

Negligence consists in the comission of some lawful act in a careless manner, or in the omission to perform some legal duty, to the injury of another. It is essential to a recovery in the latter case, to establish that the defendant owed at that time some specific, clear, legal duty to the plaintiff or the party injured.

The first inquiry, therefore, which arises in the examination of this case is, what were the relative legal rights of Nicholson, the deceased, and the defendant in respect to the *locus in quo*.

The deceased was struck and killed on the defendant's premises. This branch track, whatever may have been the rights in respect thereto, between the defendant and the Buffalo Iron Works Company, must be deemed, for the purpose

of this suit, the property of the defendant. It was a track constructed to be used as a railroad track by the defendants with their engines and cars, to accommodate their freight business in connection with, and for the benefit of the iron works. The cars, which caused the injury, were on their track, where the defendants had a clear, legal right to place and keep them. They were placed there for a lawful purpose, and in the proper discharge of their usual and ordinary business.

They had the same unqualified right which every owner of property has to do with his own as he pleases, and keep it and use it where and as he pleases, on his own ground up to the point, when such use becomes a nuisance.

Nicholson, the deceased, on the contrary, was not on his own ground. He was where he had no legal right to be. At most, he had a mere license to cross the defendant's track, a license implied from use, and from the fact that such use had not been expressly forbidden. But such license created no legal right, and imposed no duty upon the defendant, except the general duty which every man owes to others, to do them no intentional wrong or injury.

No relation existed between the defendant and Nicholson to create any particular duty, such as exists between a master and servant, or employer and his employee. The complaint alleged that the said James Nicholson was traveling upon a public highway and lawfully crossing the defendant's track. If the fact had been so, the defendant and Nicholson would have stood upon common ground, and could have had equal rights in such highway, and the defendant would have owed to him a clear legal duty; but the case seems to me to be without the first element to create a legal duty on the part of the defendants to set or secure their cars in respect to the rights of said Nicholson. He was not in their employ. He was not in the employ of the iron company. He had no lawful business at the time on their track; no legal right to use or cross it; and would have been simply excused from liability as a trespasser on the naked ground of a license, implied from previous use without objection.

The case is within the principle, I think, asserted in *Hounsell* v. *Smyth* (97 Eng. Com. Law, 731).

In that case, the question arose upon demurrer. The complaint alleged that the defendant had a certain quarry which had long been open and worked for getting out stone, and which was situated upon certain waste land, which was considered open to the public; and that all persons having occasion to come upon or over said waste land had been used and accustomed to go upon, along and across the same without interruption or hindrance from and with the license and permission of the owners thereof; that said quarry was between two highways; and that the defendant left the same unfenced and took no care to guard it; and that plaintiff, having occasion to pass over said waste land in a dark night, fell into said quarry and was injured.

The court sustained the demurrer, holding that the defendant owed no duty to the plaintiff. In respect to that part of the complaint, where it was alleged that all persons having occasion to cross or pass over the said waste land, have been used and accustomed to go upon, along, and across the same without interruption or hindrance from, and with the license and permission of the owners of such waste land, the learned judge said: "No right is alleged. It is merely stated, that the owners allowed all persons who chose to do so, for recreation or for business, to go upon the waste without complaint; that they were not churlish enough to interfere with any person who went there. One who thus uses the waste has no right to complain of any excavation he finds there. He must take the permission with its concomitant conditions, and it may be perils."

That is precisely this case. All who pleased were permitted to cross the open common waste ground, adjacent to the defendant's track, and the track itself, without hindrance; but it was at their own risk and peril. The defendant undertook or assumed no duty in respect to such persons. As was said in the above cited case, "all that can be said is, that the plaintiff had a tacit permission to cross the track.

The same principle is asserted in *Southcote* v. *Stanley* (1 Hurlst. & Norm., 247); and in *Bolch* v. *Smith* (7 Id., 732).

The case of *Driscoll* v. *Newark & Rosendale Cement Co.* (37 N. Y., 638), is not in conflict with these cases. In that case the defendant performed a lawful act in a careless manner ; and the case belongs to the class, where an action for negligence lies for misfeasance in the commission of an act lawful in itself. The defendant fired a blast in a mine, without taking the proper precautions to warn persons who might be in danger from the explosion.

The charge of the learned judge at the circuit on this point, and his refusal to charge as requested on the same point, were therefore erroneous, and the exceptions to such charge, separately, well taken. As this point is decisive of the case, I have not deemed it expedient to discuss the other questions presented in the points. The judgment should therefore be reversed, and a new trial granted with costs to abide the event

Earl, Ch. J.    At the time the intestate was killed, he was passing over the branch track upon defendant's land. It cannot be doubted from the evidence, that he had an implied license to cross at that point, and hence that he was lawfully there. He was not there by invitation of the defendant, nor in the business of the defendant, but for his own purpose on his way home. While he was lawfully there, he had no right as against the defendant to be there. It could at any time have revoked the license and then he could not have crossed at that point without being a trespasser.

The cars were lawfully upon the branch track, and the defendant had the right to have them there. The defendant owed the intestate no active duty. It owed him no duty whatever, except such as every citizen owes another. It had no right intentionally to injure him, and would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or carelessly, but it did not owe him the

duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience. If the point where the intestate was killed had been a public highway, or if at the time he had been a passenger in a car upon the main track, and he had been injured by collision with the cars coming down the branch track, or if in any other way he had been not only lawfully, but in the exercise of a right at that point, the defendant would have owed him a duty to see that the cars upon the branch track were properly secured, but as it was they owed him no duty and cannot be charged, as to him, with negligence in not blocking or fastening the cars. In reaching this conclusion, I think I am sustained both by principle and authority. In the case of *Southcote* v. *Stanley* (1 Hurl. & N., 246), the declaration alleged that the defendant was possessed of an hotel, into which he had invited the plaintiff to come as a *visitor*, and in which there was a glass door which it was necessary for the plaintiff to open for the purpose of leaving the hotel, and which the plaintiff, by the permission of the defendant, and with his knowledge, and without any warning from him, lawfully opened for the purpose aforesaid as a door which was in a proper condition to be opened; nevertheless, by and through the mere carelessness, negligence and default of the defendant the door was then in an insecure and dangerous condition and unfit to be opened, and by reason of the said door being in such insecure and dangerous condition, and of the then carelessness, negligence, default and improper conduct of the defendant in that behalf, a large piece of glass fell from the door and wounded the plaintiff. The defendant demurred, and it was held that the declaration disclosed no cause of action. The counsel for the plaintiff attempted to uphold the declaration upon the ground that the plaintiff was lawfully in the hotel. Baron BRAMWELL recognizes the distinction I have above alluded to, and places his concurrence in the decision upon the ground that the declaration alleged no " act of commission," but merely " want of care—a default in not doing something." In *Gautret* v. *Egerton* (2 Law

Reps., C. P., 370), the declaration stated that the defendants were possessed of land with a canal and cuttings intersecting the same, and of bridges across the canal and cuttings communicating with and leading to certain docks of the defendants, which land and bridges were used with the consent and permission of the defendants by persons proceeding to and coming from the docks; that they wrongfully and improperly kept and maintained the land, canal, cuttings and bridges, and suffered them to be in so improper a state and condition as to render them unsafe for persons lawfully passing along and over the said land and bridges toward the said docks; and that one G., lawfully passing over and using the bridges, through the wrongful, negligent and improper conduct of the defendants, fell into one of the cuttings and was drowned. It was held on demurrer that the declaration disclosed no actionable breach of duty on the part of the defendants. It was attempted to uphold this declaration upon substantially the same argument that has been urged here for the plaintiff, that the defendants owed G. a duty because he was lawfully upon their land. WILLES, J., in his opinion says: To create a cause of action in such a case, something like fraud must be shown and "to bring the case within the category of actionable negligence, some wrongful act must be shown or a breach of some positive duty; otherwise, a man, who allows strangers to roam over his property, would be held answerable for not protecting them against any danger which they might encounter whilst using the license." KEATING, J., says: "I am utterly unable to discover any duty which the defendants have contracted toward the person whom plaintiff represents, or what particular breach of duty is charged." The case of *Bolch* v. *Smith* (7 Hurl. & N., 732), was an action to recover damages for injuries to the plaintiff by coming in contact with machinery that was carelessly left unguarded. Baron MARTIN says: "Then what is the true condition of the plaintiff? It is said that he had a right to go along the path across which the machinery was erected, for he was a workman employed on the dock-yard, and had liberty to use the water closet.

But that is a fallacious argument. It is true the plaintiff had permission to use the path. Permission involves leave and license, but it gives no right. If I avail myself of permission to cross a man's land, I do so by virtue of a license, not of a right. It is an abuse of language to call it a right; it is an excuse or license, so that the party cannot be treated as a trespasser. Inasmuch as there was another way by which the plaintiff might have gone, but voluntarily chose the one which was out of order, I think he has no right of action against the defendant, and that he ought to have been nonsuited on the trial." In *Hounsell* v. *Smyth* (97 Eng. C. L., 729), the declaration stated that the defendants were seised of certain waste land upon which was a quarry that was worked by a certain person subject to the payment of certain royalties to the defendants; that the waste land upon which the quarry was situated was inclosed and open to the public, *and that all persons having occasion to pass over the waste had been used and accustomed to go upon and across the same without interruption or hindrance from, and with the license and permission of the owners of the waste;* that the quarry was situate near to and between two public highways leading over the waste, and was precipitous, &c., and dangerous to persons who might accidentally deviate or stray, or who might have occasion to cross over the waste for the purpose of passing from one of such roads to the other beside or near the quarry; that the defendants knowing the premises, negligently and contrary to their duty, left the quarry unfenced and took no care, and used no means for protecting the public or any person so accidentally deviating from the said roads or passing over the waste, from falling into the quarry; and that the plaintiff, having occasion to pass along one of the said roads, and having by reason of the darkness of the night accidentally taken the wrong road, was crossing the waste for the purpose of getting into the other, and not being aware of the existence or locality of the quarry, and being unable by reason of the darkness to perceive the same, fell in and was injured. It was held on demurrer, that the declaration disclosed no legal

ground of complaint. WILLIAMS, J., says: "No right is alleged; it is merely stated that the owners allowed all persons who chose to do so, for recreation or for business, to go upon the waste without complaint; that they were not churlish enough to interfere with any person who went there. One who thus uses the waste has no right to complain of an excavation he finds there. He must take the permission with the concomitant conditions and, it may be, perils." In the case of *Indermaur* v. *Dames* (2 Law Reports, C. P. 311), a gas-fitter having contracted to fix certain gas apparatus to the defendant's premises, sent his workman, the plaintiff, after the apparatus had been fixed, and by appointment with the defendant, to see that it acted properly. The plaintiff, having for this purpose gone upon the defendant's premises, fell through an unfenced shaft in the floor and was injured. It was proved that the premises were constructed in the manner usual in the defendant's business—that of a sugar refiner—but that the shaft could, when not in use, have been fenced without injury to the business. It was held that the plaintiff was not a mere volunteer, and was entitled to recover. It is clear that, if the plaintiff had been a mere volunteer upon the premises, by permission, that he would have been defeated in the action. The language of WILLES, J., in delivering the judgment in the court below, is approved, which was as follows: "We think that argument (that the plaintiff was a bare licensee) fails, because the capacity in which the plaintiff was there was that of a person on lawful business, in the course of fulfilling a contract in which both the plaintiff and defendant had an interest, and not upon bare permission." The decision in that case was based upon the ground that the defendant owed a duty to the plaintiff to provide for his safety against the accident complained of while engaged in his service. In the case of *Smith* v. *Dock Co.* (3 Law Reports, C. P., 326), the defendants, a dock company, provided gangways from the shore to the ships lying in their dock, the gangways being made of materials belonging to the defendants and managed by their

servants. The plaintiff went on board a ship in the dock, at the invitation of one of the ship's officers, on business, and while he was on board, the defendants' servants, for the purpose of the business of the dock, moved the gangway, so that it was, and to their knowledge, insecure. The plaintiff, in ignorance of its insecurity, returned along it to the shore; the gangway gave way and he was injured. It was held that there was a duty on the defendants toward the plaintiff to keep the gangway reasonably safe, and that he was entitled to recover. The recovery was put upon the express ground that the defendants owed plaintiff a duty because he had the right to go to the vessel upon the invitation of the officer to transact business; but the idea of any liability, except as they owed him a duty from the legal relation he bore to them, was expressly repudiated. BOVILL, C. J., says: " It has been contended that, if the defendants are under any liability to the plaintiff, they must be equally so to every one who comes on to the docks for the mere purpose of hawking goods; but to that I cannot agree. If a person who enters the docks be a mere volunteer, there may be no duty toward him on the part of the defendants; but if he has business on board of the ship, then it seems to me the case assumes a different aspect, even independently of the fact that he will be then coming upon the business of the dock company in the sense I have described; for the gangway being placed there as the means of access to all persons having business on board the ship it amounts to an invitation to persons having business on board the ship to go upon it, as was held with respect to the road in *Corby* v. *Hill* (4 C. B. N. S., 556). The case, then, comes within the principle that persons inviting others on to their premises are answerable for anything in the nature of a trap on their grounds. I think there was a duty upon the defendants toward the plaintiff."

The counsel for respondent cited, upon the argument of this case, among other authorities, the cases of *Corrigan* v. *Union Sugar Refinery* (98 Mass. 577), and *Driscoll* v. *The Newark, &c., Cement Co.* (37 N. Y. 673). Both of these

cases illustrate the principles to which I have called atten-
tion as controlling in the decision of this case. In the
Massachusetts case, it appeared that the plaintiff, thirteen
years old, being sent on an errand by his mother, had occa-
sion to go through a passage way adjoining the defendants'
refinery, over a portion of which way they had constructed a
roof; that it was the defendants' habit to supply ale to their
workmen in the refinery, who were accustomed to throw the
empty ale kegs out of a window down upon this roof, from
which, from time to time, they were taken away; and that,
just as the plaintiff, in going through the passage way,
emerged from under this roof, such a keg was thrown by
one of the workmen so carelessly that it fell off the roof and
struck the plaintiff on the head, and injured him greatly.
It was held that the defendants were liable, and that it made
no difference whether the way was public, and thus the
plaintiff was traveling it as a matter of right, or whether it
was private and he was traveling it by permission. GRAY,
J., delivering the opinion of the court, says: "Even if he
was there under a permission which they might, at any time,
revoke, and under circumstances which did not make them
responsible for any defect in the existing condition of the
way, they were still liable for any negligent act of them-
selves or their servants, which increased the danger of pass-
ing, and, in fact, injured him." It will be seen that the
defendants were held liable upon the ground of a negligent
*act*, not for a mere omission of duty. Suppose the keg had
been carelessly placed upon the roof and had blown off; or,
suppose the roof had been left in an insecure condition and
had fallen down and injured the plaintiff passing upon his
own business, by permission, would the defendant have been
held liable? Suppose a person is building a house upon his
own land and the scaffolding is carelessly left so insecure
that it is blown down upon some one passing by permission;
or suppose the house itself is so insecure that it falls down
upon a person thus passing, would the owner of the house
and land upon which the accident happened, be liable? I

think these questions must be answered in the negative, for the reason that while the persons charged with the supposed injury in these cases, were bound to abstain from intentionally or carelessly injuring the other persons, they owed them no duty of active vigilance and care to see that they were not injured. In the New York case, it was held that it was the duty of persons engaged in blasting, to give notice to all persons about passing within the limits of possible danger, at the time of firing the blast. Here again, was a negligent act, firing the blast without giving the notice to persons lawfully within the vicinity. It was properly held that the defendants owed a duty to all such persons, to give the notice.

The superior duty owed to a person who is rightfully at the place when he is injured, is clearly illustrated in Just. Inst., liber 4, title 3, p. 5, *de putatione* as follows: "If a man lopping a tree chance to kill a slave who is passing, he is an offender, if he worked near a public road, or in a way leading to a village, without giving proper warning; but, if he make due proclamation, and the other did not take care of himself, the lopper is exempt from fault; and he is equally so, although he did not make proclamation if he worked apart from the high road, or in the middle of a field, for a stranger has no right of passage through such place."

There is a class of cases in the books in which it has been held, that a person who sets spring guns or traps upon his own land, is liable to persons injured by them although they were trespassers. These decisions are based upon the ground that a person would have no right to intentionally and directly shoot or entrap a trespasser upon his land, and hence that he could not do that thus indirectly, which he had no right to do directly. The law holds him responsible, not upon the ground of negligence, but upon the ground that he intended the consequences which followed his acts. There is another class of cases where a person has been held liable to those who were injured while passing, by permission, over his private way. Thus, a man has a private way leading over his own land to his house, and he digs a ditch across it, or care-

lessly places an obstruction in it, and a person passing over the same toward his house is, without his own fault, injured. In such a case he would be held liable, because he may be treated as having invited the person to pass over this road to his house, and it would be a fraud on his part, knowingly to place these obstructions, in the nature of traps, in the way.

In the case under consideration, it is not shown that the defendant is chargeable with any knowledge that the brakes were not set, or that the brakes were intentionally left unset, and hence it cannot be claimed that there is any element of fraud or positive wrong in this case. It is sought to hold the defendant liable, upon the ground that it owed a duty to the intestate to know that the brakes were not set, and then to set them. The only use of this branch track was for the running of the cars. The cars were properly upon it. The intestate, when he crossed the track, knew its purpose, and he had no right to claim of the defendant that it should see that he was not injured, while under its license he was passing over the track, by the omission of any active vigilance and care. He had the right to claim that it should not purposely or carelessly injure him, but he could not ask them to be active to ward off from him the perils of the track. Hence I conclude, that the judge presiding at the trial, erred in holding that the defendant owed the intestate the duty to set the brakes.

But if it should be admitted that the defendant owed some duty to the intestate, for what degree of carelessness would the defendant be held liable? To persons riding in its cars, or traveling upon a public highway crossing a railway track, a railroad company is justly held responsible for the greatest degree of vigilance and care. But the same rule, it seems to me, cannot apply to a case like this. Here the intestate was passing over the track by permission. The defendant had entered into no contract with him, and had no legal relations with him. Its cars were upon its track so situated that they could not pass to the fatal spot except by first passing up an ascending grade. Nothing but an extraordinary wind, such as

occurred at the time, could probably have driven these cars up this grade, and the defendant had no reason to expect, from the movement of the cars, any damage, except to its own property. Was the defendant bound to expect this violent wind, that the cars might be driven by it up this grade, and then upon the intestate? Admitting the duty, the greatest degree of vigilance probably required all this of the defendant. But, did ordinary care and diligence require it? This question, it seems to me, ought, in any event, to have been submitted to the jury. If the defendant was responsible for any care to the intestate, it certainly was ordinary care only, and the court erred, under all the circumstances of this case, in holding, as a matter of law, that the case of negligence was made out against the defendant, by simply showing that the brakes were not set.

I am, therefore, for reversing the judgment below, and granting a new trial.

LOTT, J. The principal question presented on this appeal arises on the refusal of the judge on the trial to instruct the jury " that if they found the evidence given by the plaintiff's witness, Ellen McEver, as to the manner in which the deceased stepped on to the track to be true, then he was guilty of negligence, and the plaintiff could not recover." He, when doing this, according to that evidence, " had his right hand up to his hat and held it down to shield his face, to ward off the storm, that the wind was blowing hard and it was then raining." The truth of this statement must be assumed, and it establishes the fact, that the deceased was not only not looking to see whether the cars which ran over him were on the track, but also that the manner in which he held his hat prevented him from seeing them. This, under the circumstances of the case was negligence on his part. He had, from his employment, for about four years in the Union iron works and his passage daily, from the time of his employment over the tracks of the defendant to and from his residence, become fully apprised of the fact, that cars were running over this

part of the branch track, not at stated intervals but as convenience or the requirements of business demanded, and might, therefore, be expected to pass at any time. He was, therefore, bound to act on that assumption, and ordinary and common prudence, and care required him to look and ascertain whether he could pass with safety. Such a precaution is demanded of every person in crossing a common country road. No person is at liberty to place himself in a position where he knows he may be more or less exposed to danger, without taking any means to ascertain whether such danger exists. The deceased, according to this evidence, for all practical purposes, closed his eyes and voluntarily took a position where he knew he might encounter an approaching car. That act certainly contributed to his death, and his representative cannot claim compensation for its consequences.

This view of the case necessarily leads to a reversal of the judgment. It may, however, be proper also, to consider whether the court properly instructed the jury " that it was the duty of the defendant to set the brakes or otherwise fasten the cars when they were left by it in the yard of the Buffalo Union iron works."

It is true that the evidence tended to show that there was danger of the cars, left unfastened, being moved by winds in that locality, and that it was a proper precautionary measure to block the cars or fasten them in some other way to prevent such movement. I, however, do not find any facts in this case to justify the conclusion that the defendant by the omission of that precaution failed in the performance of any duty to the deceased. There was not any subsisting relation between the parties that imposed it.

Assuming that the deceased, in consequence of the previous acquiescence of the defendant in his passing over the track, could not be considered a trespasser, he had no right to impose or exact any condition or restraint as to the manner in which it should use its property. He was in the prosecution of his own business, and no connection whatever with the defendant.

A man by closing a gate in the fence separating his yard or inclosure from a highway, may effectually prevent his horse from running over a person rightfully passing on the sidewalk in front of his premises, and it may be deemed prudent to do so ; but his omission to do it cannot charge him with a negligence or breach of duty.

The defendant stood in no different relation to the deceased, and the court erred in instructing the jury in reference to its duty and its liabilities.

This view of the defendant's obligations renders it unnecessary to examine whether the failure of the defendant to fasten its empty cars (assuming that the duty existed) would have rendered it liable, there being evidence tending to show that they would have had to overcome an up grade, that there was a car loaded with coal on the track properly fastened between them and the place of collision, and that ordinary winds would not have caused such collision.

There must, on the grounds above stated, be a reversal of the judgment and a new trial ordered, costs to abide the event.

EARL, Ch. J., SMITH, GROVER, LOTT and INGALLS, JJ., for reversal on the ground of misdirection in the charge, and that the defendant owed no duty to the deceased to set the brakes.

SUTHERLAND, J., for reversal on the ground of the misdirection, and that it was a question for the jury to say whether the omission to set the brakes was negligence.

That the negligence of the deceased in stepping upon the track prevented a recovery.   LOTT and GROVER, JJ.

HUNT and FOSTER, JJ., were for affirmance.

Judgment reversed.