MARY WELLS, as Administrator, Etc., Plaintiff, *v.* THE BROOKLYN HEIGHTS RAILROAD Co., Defendant.

(Supreme Court, Queens Trial Term, February, 1901.)

Negligence — Degree of care required of an engineer of an elevated railroad locomotive towards a mere licensee upon the track.

A corporation operating an elevated railroad, owes to a mere licensee, who came upon its track while seeking employment from a contractor with the corporation, who was doing work upon the structure, the duty of having the engineer of an approaching locomotive exercise reasonable vigilance and care to see and avoid hitting him, and where the engineer fails in this respect and the licensee is killed by the locomotive, the lessee is liable in damages for his death, provided he was free from contributory negligence.

MOTION to direct a verdict for the defendant reserved until after verdict; and also motion by the defendant for a new trial on the minutes.

M. L. Towns for plaintiff.

· Geo. V. S. Williams for defendant.

GAYNOR, J.: It did not seem easy at the trial to select a rule for this case, nor does it seem easy now after reading all of the varying decisions which may be cited as possibly applicable. The plaintiff's intestate was killed by a locomotive engine on an elevated railroad in Brooklyn of which the defendant is lessee. He was there either seeking employment from a third party who was putting up signals on the said railroad structure under a contract with the defendant, or else actually working for such party. The plaintiff gave evidence that the latter and the defendant that the former was the case. He stepped upon the track and was struck. The plaintiff's evidence was that he was upon the track to pick up some material being used in the work which was lying on the ends of the ties, while the defendant's was that he was doing nothing. I finally concluded to and did charge the jury that in either case it was the duty of the engineer to exercise reasonable

vigilance and care to see and avoid hitting him, and that if he failed in this the defendant would be liable, provided the deceased were free from contributory negligence.

This would be the rule in respect of a street surface railroad; but was it the rule for this case? In *Pollitt* v. *Kings County El. R. Co.* (which I had in mind for having been counsel in it), the plaintiff's intestate was on this same railroad structure with a gang of men engaged in painting it. They were in the employ of a third party who was painting such structure under a contract with the railroad company. A train came rapidly around a bend at a station and killed the decedent. No warning was given or care used by the engineer or the company. The plaintiff was non-suited on the ground that the defendant owed the deceased no affirmative duty of vigilance or care. On appeal the late General Term of this court affirmed the judgment with the brief but unmistakable proposition that " the defendant owed him (the deceased) no duty, and was under no obligation to regulate the operation of its trains with reference to his presence " (32 N. Y. St. Rep. 954) ; and on appeal from this there was an affirmance without opinion (126 N. Y. 630).

If the *Pollitt* case is law, there should be a verdict directed for the defendant here, for the two cases are exactly alike. The ruling there was in effect that the deceased was at most a licensee on the defendant's premises, and that therefore, following the rule often repeated by the courts, there was no relation between him and the defendant which placed the said defendant under any duty of active vigilance or care toward him. It may seem that the application of such rule to one who was lawfully working on the said defendant's railroad structure, though in the employment of a third party, was extreme; but in the present case it is otherwise if, as the defendant claims, the deceased was not working on the structure, but only seeking work there of the contractor who was doing the work. In the case of a person hurt while on the premises of another seeking work, our highest court has held that " He was on the premises at the most by the mere implied sufferance or license of the defendant," *i. e.*, the owner (Larmore v. Crown Point Iron Co., 101 N. Y. 391).

And the rule that the proprietor or owner of premises stands in no particular relation to such a licensee, and therefore owes him no particular duty of vigilance or care for his safety (such as that

of master to servant, for instance), but only that general duty which every one owes according to where he is for the time being to every one else not to wrongfully hurt him, has been too often declared to be the subject of question (Nicholson v. Erie R. Co. 41 N. Y. 525; Sutton v. N. Y. C. & H. R. R. R. Co. 66 N. Y. 243; Victory v. Baker, 67 N. Y. 366; Larmore v. Crown Point Iron Co. 101 N. Y. 391; Splittorf v. State of N. Y. 108 N. Y. 205; Morris v. Brown, 111 N. Y. 318; Donahue v. State of N. Y. 112 N. Y. 142; Cusick v. Adams, 115 N. Y. 55; Sterger v. Van Sicklen, 132 N. Y. 499; Walsh v. Fitchburg R. R. Co. 145 N. Y. 301).

The decisions holding (as in Barry v. N. Y. C. & H. R. R. R. Co. 92 N. Y. 289; Byrne v. N. Y. C. & H. R. R. R. Co. 104 N. Y. 362; Swift v. Staten Island R. T. Co. 123 N. Y. 645) that in the case of crossings of steam railroads which though not official public highways have long been used as thoroughfares by the public generally, the same rule of active vigilance and care by the railroads toward crossers applies as in the case of official highway crossings, constitute no modification or exception to the above rule in respect of licensees, though the contrary seems sometimes to be understood. Such crossings are classed in the rule with public highway crossings, because they are to all intents and purposes, and as a rule legally, public highways, though not officially such in that sense which makes the town or municipality liable for their repair. For a clear distinction on this head one has only to read the cases last above cited, and then *Sutton* v. *N. Y. C. & H. R. R. R. Co.* (66 N. Y. 243) and *Nicholson* v. *Erie R. Co.* (41 N. Y. 525). In the former cases the railroad company was held to such active duty of vigilance and care because the crossing, though not an official highway, was used as a highway by the public generally; while in the latter the railroad company was not held to such duty because the crossing though habitually used as such was not used by the public generally, but only by a limited or particular set of people.

As an illustration of the difference in the legal relation of an owner or proprietor to persons on his premises, it may be instanced that one felling a tree on his own land but near the highway is under a duty of vigilance and care toward passers by on the highway to see that the tree does not fall on them; or if he be felling it in his lot away from the highway, he owes the same duty to persons there on his business or by his invitation; but to persons who

come into his lot from the highway without such business or invitation, he owes no such duty (Nicholson v. Erie R. Co., 41 N. Y. p. 539). The only duty in this last case is the general one which we all owe to do no affirmative wrongful act toward any one to his hurt. And if a servant do such an act, the master is not liable for it, for the rule of *respondeat superior* has no application thereto. That rule applies only where the duty of the master is violated by the servant, and where no such duty exists the rule does not exist. If a servant violates only his own duty, the master is not liable therefor, but only where the servant violates the master's duty.

Under the foregoing decisions a verdict would have to be directed for the defendant here, were it not for a more recent decision which I had in mind, and under which it seemed and now seems to me that this case was properly submitted to the jury, conceding that the deceased was no more than a licensee in respect of the defendant (De Boer v. Brooklyn Wharf Co. 51 App. Div. 289). In that case the defendant owned a wharf along the water front, from which piers extended out. There were gates at all of the entrances to the wharf, but they were necessarily open as a rule because of the large number of persons who had to go in and out constantly to and from the ships and the wharf and piers on business. There was a steam tramway along the wharf to carry the merchandise from place to place, and there were warehouses along the wharf. The place was one of great commercial activity. The plaintiff's intestate was walking through there for a short cut instead of keeping to the streets. Many people in the neighborhood who like the said intestate had no business on the wharf were in the habit of making use of it as a short cut. While the engineer was trying to make a close shave by boxes of merchandise lying alongside of the said tramway, and was going slowly, the corner of the engine beam, or a bolt head, struck one of the boxes and tipped it over on the intestate, whom the engineer had not seen, and killed her. A non-suit was granted on the ground that the defendant stood in no particular relation to persons who went upon the said wharf without business there, and for their own convenience, and was therefore under no duty to look out for them, or of active vigilance and care in respect of them. This was reversed, the court holding that the defendant owed to such persons the affirmative duty of vigilance and care, the same as

to persons who had business on the wharf. As the reporter does not state the facts of the case, I have had recourse to the appeal record for them. The wharf was private property, with gates at the entrances, and there was no evidence that the defendant gave permission for any one to enter who had no business to transact there, unless that could be inferred from the fact that every one was not stopped at the entrances, and forbidden to enter, unless on business; and it would seem that the court did so infer, for the wharf is called a thoroughfare in the opinion, and the tramway is treated the same as though it were a railroad on a public street.

I think this decision fully supports the present plaintiff's case, and it is my duty to follow it, even if it seemed to me contrary to the rule as heretofore applied. If the owner of the wharf was liable for the ordinary negligence of its employes in the moving and hauling of merchandise on the wharf, the hoisting of it by block and fall into the warehouses, and, in a word, in all the ordinary business of the place, to every fisherman, loiterer or person who came there for his own convenience or pleasure, by much stronger reason the defendant here is liable to the plaintiff for the like negligence of its engineer.

My attention is called to the rule to the contrary stated by Judge Thomas in his work on Negligence, as a summary of the decisions, viz., that "the owner need not observe care toward such persons in his usual and ordinary occupation of his premises" (p. 1077); but this was put to the court in the case last cited, and disposed of as follows: "The accident did not occur because of anything connected with the ordinary and usual course of conduct of the defendant's business, but because of carelessness and negligence in the conduct of the train in question, which, we assume, has not been the ordinary and usual course of the defendant in the operation of its road." This plainly is that there is no such rule; for to say, as the court does, that it is not the ordinary course of business if there be negligence, leaves nothing for the rule to operate on, for it must operate on negligence of servants in the ordinary course of the business or on nothing.

The rule as generally understood seems to have been that in the case of such licensees the master is in none of the particular legal relations to them which would require of him any affirmative duty of vigilance or care toward them, and that therefore if one of his servants while in his business injure such a person by a

lack of such vigilance or care, the rule of *respondeat superior* in respect thereof would have no application.   The rule of *respondeat superior,* it is true, is limited by the duty of the master to the person injured by the servant's negligence, and if that duty does not exist, the rule does not exist; there is nothing for it to take hold of.   But following the decision in the *De Boer* case, it seems to exist in its fullness here.

The motions are denied.