THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v. FRANK A. PIERSON, APPELLANT.

*Indictment — violation of chapter 720, Laws of 1887, relative to fire-escapes in hotels —
this act does not apply to New York city — when a special act is not affected by a
general act on the same subject.*

The provisions of chapter 720 of the Laws of 1887, which took effect June twenty-
fifth of that year (the general act relating to fire-escapes in hotels), does not
apply to the city of New York, the subject being fully covered, so far as that
city is concerned, by section 499 of chapter 410 of 1882, the Consolidation Act, as
amended by chapter 566, Laws of 1887, which took effect July 5, 1887.

Where it appears that the legislature has passed an act relating to a certain subject
in a particular city, said act being in all respects more precise and far-reaching
than a general act relative thereto passed subsequently, but going into effect a
few days earlier than the special act, the court will assume that the general act
was not intended to repeal, supersede or modify the special enactment.

APPEAL by the defendant from a judgment of conviction of a
violation of chapter 720 of the Laws of 1887, in that he had neg-
lected to place " a rope, or other better appliance to be used as a fire-
escape, in every room of (the Sturtevant House) a hotel, used as a
lodging-room, except the rooms on the ground floor," which judg-
ment was rendered against him, in the Court of General Sessions of
the city and county of New York, on the 13th day of March, 1890.

*W. J. Fanning*, for the appellant.

*McKenzie Semple*, assistant district attorney, for the respondent.

BARRETT, J.:

This appeal brings up the question whether the city of New
York is excepted from the operation of chapter 720 of the Laws of
1887, entitled " An act to provide fire-escapes in hotels," commonly
known as the " rope act." The appellant claims such exception
under section 499 of the consolidation act, as amended by chapter
566 of the Laws of 1887. The latter amendment was passed on the
fifteenth day of June and was made to take effect twenty days
thereafter, while chapter 720 was passed on the 25th day of June
and took effect immediately.

Chapter 720 is a general law, on its face applicable to the whole
State, requiring the proprietors or managers of every hotel exceed-

ing two stories in height, which is not fire-proof, to " place or cause to be placed a rope or other better appliance, to be used as a fire-escape, in every room of said hotel used as a lodging room, except the rooms on the ground floor." Violation of this requirement is punishable as a misdemeanor, and, as a means of enforcement, provision is made for semi-annual inspections of every room in every city and village hotel in the State. The appellant's contention is that the amendment of the Consolidation Act, to which we have referred was intended to provide a comprehensive and exclusive system for the city of New York, adequate to remedy all the mischiefs aimed at, embracing a much wider area of subjects than the general act, and conferring authority to effect its objects by better and more appropriate means than a single crude make-shift. This contention is well founded and the amendment in question certainly does create such a system. It is entirely clear, from an examination of these acts, that the general law was not intended to repeal, supersede or modify the carefully framed and broad provisions of the special enactment. The real question is whether these acts are both applicable to the locality. Was it intended to superadd the single and special safeguard, provided for in the general act, to the elaborate system of safeguards furnished by the special act? After a careful review of these acts, we think this question must be answered in the negative. The requirement of the single safeguard in the general act is absolute. The authority conferred by the special act is plainly inconsistent with the absolute requirement of any one particular safeguard. That act leaves the entire subject to the judgment of the superintendent of buildings, acting with the concurrence of the board of fire commissioners. This is expressive of the inadequacy of any iron-clad legislative *formula*, and of the intention to substitute therefor the judgment of a skilled expert, acting from time to time upon progressive ideas, with the approval of the local officials, whose functions best qualify them to co-operate with him. Under this special act the hotel-keeper may be required to provide the rope called for by the general act. But he may also be required to do much more. He may, in fact, be required to provide genuine and adequate fire-escapes based upon experience and scientific principles. Can it be possible that where this has been done the hotel-keeper must also, to satisfy the

legislative intent, lumber up each room in his house with a coil of
rope? An appliance which, in case of fire, would tend to distract
attention from other and better means of escape, and possibly jeopard-
ize the guest's life by suggesting an attempt to utilize the first and
poorest device at hand? It seems reasonably clear that that could
not have been the legislative purpose. It seems equally clear that the
single and imperfect safeguard required by the general act was not
intended to operate, where special provision for a complete and
thorough system was made for any particular locality in the State.
Where no such special provision has been made, the general law is,
of course, operative. The legislature thus, in effect, says, where we
have nothing better, we will at least have this. Everything in the
two acts points to this construction. The general act excludes from
its operation fire-proof buildings. In such not even a rope is required.
The special act makes no such distinction. The practical enforce-
ment of the general act is placed in the hands of the chief engineer
of each fire department in the State (or some person deputized by
him) and the mayor or other chief executive officer of cities and
villages. The special act, as we have seen, intrusts the execution
of its requirements to the superintendent of buildings acting in one
line of duty alone, and in another with the concurrence of the board
of fire commissioners. This last consideration suggests a seeming
inaccuracy in one statement made, in his brief, by the learned counsel
for the respondent. He says that the only provision in the special
act on the subject in question is that which authorizes the superin-
tendent of buildings to direct what fire-escapes and means of egress
shall be provided for buildings occupied as hotels "*more than three
stories in height and having more than fifteen rooms.*" If this were
all, there might be some force in the argument that the mischiefs
aimed at were not fully covered. But reading further on in the
same section, we find the following additional provisions :

"In all buildings of a public character already erected, or here-
after to be built in said city, *such as hotels*, churches, theatres,
restaurants, railroad depots, public halls and other buildings used or
intended to be used for the purposes of public amusement or instruc-
tion, the halls, doors, stairways, seats, passage-ways and aisles shall
be arranged as the superintendent of buildings, with the concurrence
of the board of fire commissioners, shall direct, to facilitate egress in

cases of fire or accident, and to afford the requisite and proper accommodation for the public protection in such cases. * * *

" The superintendent of buildings, with the concurrence of the board of fire commissioners, may, at any time, serve a written or printed notice upon the owner, lessee or manager *of any said buildings, directing any act or thing to be done or provided in or about the said buildings and the several appliances therewith connected, such as halls, doors, stairs, windows, seats, aisles, fire-walls and fire-escapes, so as to afford such security to the public in the uses to which they may be severally applied, as they may deem necessary.*"

Thus buildings of every kind and class, used for hotel purposes, are brought within the operation of the law, and the local officials are authorized to exercise their judgment with regard to hotels of the character specified in the general act as fully as with regard to any other structure. It will be observed that the general act was passed but a few days after the special act. Now, the latter exhibits the utmost care in its preparation. It is minute, detailed, comprehensive and seemingly all sufficient. It is scarcely conceivable that, after all this, the legislature intended a few days later to say to the officials upon whom they had conferred such broad powers — there is one point, however, upon which you shall not exercise any discretion, and that is, as to having a rope or other better appliance in every room. That *must be*, whether you can improve upon it or not, whether it mars your more scientific methods or not.

Finally, the argument is pressed upon us that as the special act repeals all former provisions of the local law for criminal prosecution of offenders against fire-escape laws, it must have been because a substitute was contemplated in the criminal provisions of the rope law. We think that this suggestion of legislative " looking forward " is quite gratuitous. There was nothing in the surroundings to justify such an implication. A substitute for these criminal provisions, and an exceedingly effective one, was provided in the special act itself, namely, the provision of section 513 authorizing the fire department, in case the directions of the superintendent are not complied with, to ask the Supreme Court for an order directing the department *to vacate the building until compliance is made* ; also authorizing the department to do the work itself and to charge the expense as a lien upon the building. With such practical and efficient remedies,

resort to the criminal law became unnecessary. The object of punishment was to compel the result. It was a means to an end. Here the end was accomplished directly, and indirect means are superfluous.

Our conclusion is that the city of New York is not within the operation of the general act in question, and that, therefore, the judgment should be reversed and the defendant discharged.

Van Brunt, P. J., concurred; Bartlett, J., dissented.

Judgment reversed and defendant discharged.