(85 App. Div. 355.)

CITY OF NEW YORK v. TRUSTEES OF SAILORS' SNUG HARBOR IN THE CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. MUNICIPAL CORPORATIONS—BUILDING REGULATIONS—STATUTES—REPEAL BY IMPLICATION—LABOR LAW.

Greater New York Charter, p. 224, § 647, provides that the several acts relating to the construction, alteration, or removal of buildings in the city are continued in force except so far as modified by the act, provided, however, that the municipal assembly shall have power to establish and amend the ordinances known as the "Building Code," but requires that the provisions of such Building Code "shall be in conformity with and be subject to all general laws of the state concerning buildings." Held, that this was merely declarative of the general rule that ordinances must conform to the laws of the state, and that the intent of the statute was to continue the exclusive jurisdiction which the building department of New York City had over fire escapes within the city, and did not give the state factory inspector jurisdiction within the city.

2. SAME—STATUTES—CONSTRUCTION.

Labor Law (Laws 1897, p. 481, c. 415, § 82), providing that such fire escapes as may be deemed necessary by the factory inspector shall be provided on the outside of every factory in this state consisting of three or more stories in height, and enacting that the factory inspector may

establish and maintain a sub-office in the city of New York, does not repeal by implication the provision of the Greater New York Charter (Laws 1897, c. 378), enacted but nine days prior to the labor law, granting and continuing to the superintendent of buildings in the city of New York jurisdiction to require the erection of fire escapes on factory buildings in that city.

Action by the city of New York against the trustees of the Sailors' Snug Harbor in the City of New York. Submission of controversy on an agreed statement of facts. Judgment for plaintiff.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

Matthew C. Fleming, for plaintiff.
Lewis L. Delafield, for defendant.

O'BRIEN, J. The question at issue is whether, under the present law, the superintendent of buildings in the city of New York, or the factory inspector of the state, has jurisdiction to require the erection of fire escapes on factory buildings in the borough of Manhattan. It appears that the defendant is the owner of a factory building known as Nos. 24 to 34 University Place, in the borough of Manhattan, upon which the superintendent of buildings directed it to put a fire escape of a particular kind and pattern, but which it neglected to do, on the ground that jurisdiction over the subject was vested in the state factory inspector.

One curious to trace the history of the legislation on this subject of fire escapes since 1882 will find it contained in sections 427 and 429 of the consolidation act (chapter 410, p. 111, Laws 1882). Section 499 was amended by section 26, c. 566, p. 757, Laws 1887. The next amendment of the consolidation act affecting this question is contained in chapter 275, p. 543, Laws 1892. With respect to legislation affecting the department of labor of the state of New York, we have chapter 409, p. 629, Laws 1886, as amended by chapter 673, p. 1372, Laws 1892; and the latter contains the first enactment by the Legislature giving to the factory inspector jurisdiction over fire escapes on factories in the state. It will be noticed that in 1892 the situation was that the general law gave jurisdiction over fire escapes on factories to the factory inspector, and such law was passed at the same session, and but a short time after the passage of the special law giving jurisdiction over all fire escapes in the city of New York to the department of buildings in that city.

The question of how far the special act was affected by the general act on the same subject was directly passed upon in the case of People v. Pierson, 59 Hun, 450, 13 N. Y. Supp. 365. Therein the question was whether the provisions of chapter 720, p. 936, Laws 1887, the general act relating to fire escapes in hotels, applied to the city of New York, and whether that subject was covered, so far as the city was concerned, by section 499, c. 410, p. 137, Laws 1882 (Consolidation Act), as amended by chapter 566, p. 757, Laws 1887; and it was held that the provisions of the general law did not apply, and that "where it appears that the Legislature has passed an act relating to a certain subject in a particular city, said act being in all respects

more precise and far-reaching than a general act relative thereto, passed subsequently, but going into effect a few days earlier than the special act, the court will assume that the general act was not intended to repeal, supersede, or modify the special enactment." We have authority, therefore, for the proposition that, under the laws as they existed in 1892, and until the enactment of the labor law of 1897 (page 481, c. 415, § 82), the superintendent of buildings in the city of New York had "full and exclusive power and authority within said city to direct fire escapes and other means of egress to be provided upon and within said buildings," including factories. By that general act (Labor Law), which took effect on June 1, 1897, it was provided: "Such fire escapes as may be deemed necessary by the factory inspector shall be provided on the outside of every factory in this state, consisting of three or more stories in height." That this act was not intended to supersede all local statutes dealing with factories and other commercial buildings in this city, is shown by the provisions of section 90, which, while conferring authority upon the factory inspector to examine into the general condition as to safety of factory buildings, and authorizing him to give orders with respect thereto, expressly excepted the cities of New York and Brooklyn from such provisions. It is urged, however, that this exception as to inspection for safety shows an intention upon the part of the Legislature to confer upon the factory inspector power over fire escapes in this city, because in respect thereto no such exception relating to the cities of New York and Brooklyn was expressly enacted. It was also provided, in the same law of 1897 (page 476, c. 415, § 66), that the factory inspector may establish and maintain a sub-office in the city of New York; and upon this the argument is made that this provision is indicative of the legislative intent that jurisdiction over fire escapes should be vested in that officer. It is further argued that the city of New York, as now constituted, embraces many boroughs in addition to Brooklyn and Manhattan which are not controlled by the provisions of the consolidation act, and that therefore, though it be held that the latter act applied to the old city of New York, it could not be regarded as applicable to the territory embraced within the greater city, and that it would be incongruous to have within the greater city two departments exercising, with respect to the same subject, jurisdiction in different boroughs. Such arguments are pertinent and helpful, but by no means conclusive, we preferring, because more certain, to follow the more general and well-settled canons of construction, in order to determine what was the legislative intent. The force and effect, moreover, of these arguments, is greatly weakened by the fact appearing that at the same session of the Legislature, and but nine days prior to the adoption of the labor law, the Greater New York Charter (chapter 378, Laws 1897) was enacted. We are thus confronted with a condition of the law not radically different from that existing in 1892, and find at both periods a general law and a special law relating to the same subject, and passed at the same session of the Legislature. By a like process of reasoning, we should reach the conclusion that by the general act it was not intended, in the absence of an express

repeal (which in this case does not exist), to destroy the local act which had just been enacted. By section 647 of the charter (page 224) it is provided:

"The several acts in effect at the time of the passage of this act concerning, affecting or relating to the construction, alteration or removal of buildings * * * are hereby continued in full force and effect in such municipal and public corporations respectively, except in so far as the same are inconsistent with or are modified by this act; provided, however, that the municipal assembly shall have power to establish and, from time to time, to amend, the code of ordinances to be known as the 'Building Code,' providing for all matters concerning * * * construction, alteration or removal of buildings or structures erected or to be erected in the city of New York as constituted by this act, * * *. The provisions of such 'Building Code' shall be in conformity with and be subject to all general laws of the estate [sic] concerning, affecting or relating to buildings or classes of buildings or other structures."

That the exclusive jurisdiction which the building department had over fire escapes, and which we think existed up to 1897, was continued under this section of the charter, we would regard as placed beyond doubt, were it not for the provision authorizing the municipal council to enact a Building Code, and the language which we have quoted at the end of section 647, that the provisions of such Building Code shall be in conformity with and be subject to all general laws of the state concerning buildings. We think that the meaning to be attached to this language is that which has been frequently given to similar language when used by the Legislature as declarative of the general rule that ordinances must be in conformity with the laws of the state. We think, with the plaintiff, that "it is not reasonable to suppose that on May 4, 1897, the Legislature should have registered its declaration that the carefully prepared system applicable to all buildings in New York City should continue, and then, on May 13, 1897, should have meant to declare that, as soon as a Building Code was passed, this carefully worked-out plan should cease to apply to one class of buildings, namely, factories. It certainly meant to except New York City from the application of this portion of the labor law, since that city was already amply provided for. If the municipal assembly had seen fit to provide in the Code that no factories in New York City should be provided with fire escapes, perhaps this provision would be void, as inconsistent with the labor law; but the provisions of the Building Code are in harmony with that law, and therefore valid." Any other construction would impute to the Legislature an intent that in the city of New York the superintendent of buildings should have jurisdiction with respect to fire escapes on factories until such time as the Building Code was enacted, and then, when such Building Code was enacted, that with respect to factories such jurisdiction should cease. We think that this would be a forced construction to give to the language, and that, on the contrary, the whole trend of the legislation since 1862 to which attention has been called, down to 1897, when the labor law was passed, shows a clear legislative scheme of having the jurisdiction of the factory inspector apply to all the state, except certain cities like the city of New York, wherein full and ample provision had been made for carrying out the same character of remedial legislation affecting

the construction, management, and equipment of factory and other buildings.

If we are right in our construction that the Building Code, as enacted pursuant to authority, continued the jurisdiction which was conferred upon the·superintendent of buildings over fire escapes in the city of New York, it will be well to note that this Building Code is confirmed by section 407 of the amended charter (Laws 1901, p. 179, c. 466), which reads as follows:

"The Building Code which shall be in force in the city of New York on the first day of January, 1902, and all then existing provisions of law fixing the penalties for violation of said Code, and all then existing laws affecting or relating to the construction, alteration or removal of buildings or other structures within the city of New York are hereby declared to be binding and in force in the city of New York."

In view of this ratification by the Legislature of the power to enact the Building Code, we fail to see why the Building Code should not be given the same force within the corporate limits as the statute passed by the Legislature itself. Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490; Griffin v. City of Gloversville, 67 App. Div. 403, 73 N. Y. Supp. 684; City of Buffalo v. N. Y., L. E. & W. R. R. Co., 152 N. Y. 276, 46 N. E. 496.

Passing, however, from these special considerations to a general survey and review of the subject, we think it apparent, from the history of the legislation to which we have attempted briefly to refer, that it is therein shown that, although it was the intention to enact a general law which would confer exclusive jurisdiction upon the factory inspector in other parts of the state, there was certainly no express—nor do we think there was an implied—repeal of the special and local law which conferred upon the superintendent of buildings in the city of New York the right and power to assume jurisdiction within that territory over the subject of fire escapes on factories. The fact that both in 1892 and 1897, when the general laws on the subject were passed, at the same session, local laws bearing on the same subject, and relating to the city of New York, were enacted, brings the whole subject within the rule of construction, urged by the city, that a special statute providing for a particular class of cases is not repealed by a subsequent statute general in its terms, provisions, and application, unless the intent to repeal it is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law.

This statement of the rule, we think, well summarizes the controversy. Taking the labor law and its general terms, it would seemingly be of general application to the entire state; but to give it such an application would render nugatory the special and local laws which are shown to have been carefully prepared and passed at the same session of the Legislature at which such general law was enacted. Were it the intention of the Legislature to destroy the work of the day before, it would have been easy to have said so. But in the absence of such expression, and in view of the course of legislation on the subject since 1882, we think it was the intention of the Legisla—

ture, by the enactment of the local and special law, to leave in the city of New York jurisdiction to the proper officer of that city over the subject of fire escapes upon factories therein.

Upon the facts, therefore, we think that judgment should be for the plaintiff, with costs.   All concur.