(121 App. Div. 684.)

### KENNEY v. BROOKLYN BRIDGE STORES CO.

(Supreme Court, Appellate Division, First Department.    October 25, 1907.)

1. NEGLIGENCE—BUILDINGS—HATCHWAYS.

    Consolidation Act, Laws 1882, p. 134, c. 410, § 492, as amended by Laws 1892, c. 275, p. 566, § 28, provided that hoistways, etc., in buildings should be protected by substantial guards or gates, and with such sufficient trapdoors with which to close the same as may be directed and approved by the superintendent of buildings, and that such guards or gates should be kept closed at all times, except where in actual use, and the trapdoors should be closed at the close of business each day by the occupants of the buildings. Decedent and his employer on an architect's direction went to a building during business hours to examine the covers of a hoistway for the purpose of making repairs, and while walking in a dark room with a candle decedent fell through the partly opened hoistway. Held, that there was no violation of the foregoing law so as to make the occupant of the building liable for decedent's death; a sufficient trapdoor having been provided, and it not appearing that the owner or occupant of the building knew that decedent or his employer were to be in the building at the time of the accident.

2. SAME.

    Consolidation Act, Laws 1882, p. 134, c. 410, § 492, as amended by Laws 1892, p. 566, c. 275, § 28, provided for the guarding of hoistways, etc., in buildings and the closing of trapdoors after business hours. New York Charter, Laws 1897, p. 224, c. 378, § 647, provided that existing building acts affecting the city should remain in force except where inconsistent with or modified by the charter, but provided the municipal assembly might establish a building code, and thereafter such acts should be without effect. New York Charter 1901, Laws 1901, p. 179, c. 466, § 407, as amended, declared that the building code in force in the city January 1, 1902, and all the existing building laws, should be in force. Held, that upon the enactment of a building code by the municipal authorities the provisions of the consolidation act relating to buildings in the city were repealed, and the liability of an occupant of a building for the

death of a carpenter, who fell through a partly open hoistway August 13, 1903, must depend upon the building code then in force.

Appeal from Special Term.

Action by Sarah A. Kenney, Lewis A. Kenney's administratrix, against Brooklyn Bridge Stores Company. From an order granting defendant's motion to set aside a verdict for plaintiff and directing a new trial, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Joseph P. Osborne, for appellant.
Charles J. Dodd, for respondent.

INGRAHAM, J. On the trial, the plaintiff having obtained the verdict of the jury, the court, on motion of the defendant, set it aside and ordered a new trial upon the grounds, as recited in the order, that the verdict was contrary to law, contrary to the evidence, contrary to the weight of evidence, and upon all the grounds set forth in section 999 of the Code of Civil Procedure; and from that order the plaintiff appeals.

The plaintiff's intestate was a carpenter, 48 years of age, and his death was caused by an accident which happened on certain premises occupied by the defendant. From the evidence it appeared that the deceased was in the employ of one Lawrence; that Lawrence had an order from an architect to do certain work on the stairways and to board over the underside of the hatchway covers in a building occupied by the defendant, located under one of the arches of the Brooklyn Bridge; that to make some measurements for this work Lawrence and the deceased went to the premises on August 13, 1903, about 3 o'clock in the afternoon; that they were admitted to the premises by an employé of the defendant, who opened the building for that purpose. The building had windows in front and rear. The front shutters were open, and the rear shutters closed. After taking the measurements of the stairways, the deceased was informed that he would have to board over the bottom of the hatchway covers so that they could be covered with metal. These covers were off to the left, and the deceased, having a candle in his hand, started to walk towards the covers. The place was quite dark. The deceased stepped on a cover and walked towards the rear, holding a candle in his hand, when suddenly he and the candle disappeared, and he was found on the floor below unconscious. In a few moments he revived, got up without assistance, and walked towards the front of the building. He was subsequently taken to the hospital and died from a fracture of the skull. The room in which these men were measuring was very dark. They could scarcely see anything. Lawrence testified that he had been in the premises about two weeks before the accident to make an estimate on the work. He was subsequently given an order to do the work. The premises were used as a warehouse, and the deceased and his employer were there to measure the size of the covering of these very hatches through which the deceased fell. Neither the deceased nor his employer had any relation to the defendant, but the employer was

ordered to do work upon the premises by an architect. The hatch covers for these hatches were raised six or eight inches above the floor, but for some reason at the time of the accident the covers of the hatchway had not been placed so that the hatchways were entirely covered. The evidence is uncontradicted that three days before the accident this cover was placed upon the hatchway so that the hatchway was entirely covered.

The plaintiff relies upon section 487 of the consolidation act (chapter 410, p. 131, of the Laws of 1882, as amended by chapter 566, p. 738, of the Laws of 1887), which provided that the hoistways, freight elevator, or wellhole must be protected by sufficient railings or good and sufficient trapdoors, and such railings and trapdoors be closed at all times, except when in actual use by owners or occupants of buildings having use or control of the same. Section 487 of the consolidation act, as originally adopted, contains the provision in regard to hoistways, elevators, or wellholes. But this section was further amended by section 23, c. 275, p. 561, of the Laws of 1892, by which all provisions in regard to hoistways, elevators, or wellholes were eliminated. By section 28 (page 566) of the same chapter, section 492 of the consolidation act was amended so as to provide that:

"In any building in which there shall be any hoist way or freight elevator or well hole not inclosed in walls constructed of brick or other fire-proof material and provided with fire-proof doors, the openings thereof through and upon each floor of said building, shall be provided with and protected by a substantial guard or gate and with such good and sufficient trap-doors with which to close the same, as may be directed and approved by the superintendent of buildings. * * * Such guards or gates shall be kept closed at all times, except when in actual use and the trap-doors shall be closed at the close of the business of each day by the occupant or occupants of the building having the use or control of the same."

This section is included in title 5 of chapter 11 of the consolidation act, is headed "Construction of Buildings," and the title contains a building code for the construction of buildings in the then city of New York.

It is very doubtful whether the evidence discloses a violation of the provisions of this section as amended in 1892. The hoistway was protected by a substantial guard with which to close the same when the covering of the hoistway was in place, and there is no evidence that any other or different guard or trapdoor had been directed and approved by the superintendent of buildings. The accident happened about 3 o'clock in the afternoon, and there is no evidence to show that that was after the close of business of that day. A substantial guard and a good and sufficient trapdoor to this hoistway having been provided by the owner of the building, and the accident happening during business hours, I do not see that the provisions of this statute were violated. The evident intent of this statute, providing that after the close of business the guards or trapdoors to close the hoistways or elevator shafts should be closed, was to protect firemen or others who were necessarily called to the building after business hours. The owner or occupant of this building, so far as appears, had no notice that the deceased or his employer were to be in this building at the time of the accident. They had been employed by an archi-

tect, under whose authority is not disclosed, to make certain repairs or additions to the coverings of these hoistways. They voluntarily went into the building to examine the covers to this hatchway for the purpose of making the repairs, and in a dark room, with only the light of a single candle, which the deceased was carrying, went to look at one of the covers that were to be repaired. I do not think that the deceased or his employer were within the class for whose benefit this statute was passed, or that it could be said that he (defendant) who was in occupation of the building was responsible for an accident happening under the circumstances here disclosed.

But it would seem that these provisions of the consolidation act as amended have been superseded and are not now in force. Section 647 of the New York Charter (chapter 378, p. 224, of the Laws of 1897) provides:

"The several acts in effect at the time of the passage of this act concerning, affecting or relating to the construction, alteration or removal of buildings or other structures in any of the municipal and public corporations included within the city of New York as constituted by this act are hereby continued in full force and effect in such municipal and public corporations respectively, except in so far as the same are inconsistent with or are modified by this act; provided, however, that the municipal assembly shall have power to establish and from time to time to amend a code of ordinance, to be known as the 'building code,' providing for all matters concerning, affecting or relating to the construction, alteration, or removal of buildings or structures erected or to be erected in the City of New York, as constituted by this act, * * * and provided further that upon the establishment of such code the several acts first above mentioned shall cease to have any force or effect, and are hereby repealed, but such repeal shall not take effect until such 'building code' shall be established by the municipal assembly as herein provided."

There is no proof in this case that such a "building code" had been adopted by the municipal assembly, and I do not know that the court can take judicial notice of that fact. But section 407 of the Charter of 1901 (chapter 466, p. 179, of the Laws of 1901, as amended) provides that the building code which shall be "in force in the city of New York on the first day of January, nineteen hundred and two, and all then existing laws affecting or relating to the construction, alteration or removal of buildings or other structures within the city of New York are hereby declared to be binding and in force in the city of New York, and shall continue to be so binding and in force except as the same may from time to time be revised, altered, amended or repealed as herein provided," with the further provision giving to the board of aldermen power from time to time to amend such building code. In the case of City of New York v. Trustees of Sailors' Snug Harbor, 85 App. Div. 355, 83 N. Y. Supp. 442, affirmed on opinion below, 180 N. Y. 527, 72 N. E. 1140, it was held that the building code enacted under the authority of the charter of 1897 should be given the same force within the corporate limits as a statute passed by the Legislature, and at the date of that decision, in 1903, a building code was in force in the city of New York. It would seem therefore that, under the express provisions of the charter of 1897, upon the enactment of that building code by the municipal authorities the provisions of the consolidation act in relation to the construc-

tion of buildings in the city of New York were repealed, and the liability of the defendant, if any, must depend upon the building code in force on August 13, 1903, the date of this accident. As the statute upon which the plaintiff relies has clearly been repealed, and as there is no statute or provision of law which it appears was violated by the defendant, I think the court below was clearly right in setting aside the verdict and ordering a new trial.

It follows that the order appealed from should be affirmed, with costs.

LAUGHLIN and CLARKE, JJ., concur. PATTERSON, P. J., and HOUGHTON, J., concur in result.