RACINE v. MORRIS et al.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

1. NEGLIGENCE (§ 124*)—ACTION FOR NEGLIGENT DEATH—EVIDENCE—ADMISSIBILITY.

In an action for the death of a member of the police force of the city of New York while in a private building after office hours examining the same after discovering an open door, the rules of the police department imposing duties on the members of the force with respect to vacant premises are admissible.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 124.*]

2. NEGLIGENCE (§ 32*)—LICENSEE—WHO IS.

A policeman of the city of New York who is on premises in the pursuance of official duty to protect life and property imposed by Greater New York Charter (Laws 1901, c. 466) § 315, is a licensee by operation of law through public necessity, which requires policemen in the performance of their duties to lawfully enter on private premises, but he is not on the premises by express or implied invitation of the owner.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

3. NEGLIGENCE (§ 32*)—LICENSEE—LIABILITY OF OWNER.

An owner of private premises owes no duty of active vigilance to a mere licensee on his premises without express or implied invitation, nor does he owe him the duty of even ordinary care as to the condition of his premises or buildings or other structures or machinery thereon, but he does owe him the duty to refrain from intentionally or willfully injuring him, and he is liable for personal injuries caused by affirmative acts of negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

4. NEGLIGENCE (§ 47*)—PITFALLS—LIABILITY.

An owner owes to those who are innocently, but technically, trespassers on his premises, and to licensees, the duty to refrain from setting pitfalls, spring guns, or traps, or having machines inherently dangerous, or vicious animals loose on the premises.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 61; Dec. Dig. § 47.*]

5. NEGLIGENCE (§ 42*)—EXCAVATIONS—LIABILITY.

The rule that no person may construct and maintain a dangerous excavation on his premises in close proximity to a public way by which those

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lawfully using the way and in the exercise of proper care may receive in-' juries does not apply in behalf of a police officer who did not go on prem-, ises accidentally while in the exercise of his right to use a public way, but who purposely went on the premises in the performance of official duty.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 57; Dec. Dig. § 42.*]

6. NEGLIGENCE (§ 32*)—DANGEROUS PREMISES.

An owner of property used for business purposes is under a duty to those lawfully going on the premises to exercise reasonable care to keep the approaches to his office or place of business in a reasonably safe condition for traveling, but he does not owe this duty to a police officer on the premises in the performance of official duty.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec., Dig. § 32.*]

7. NEGLIGENCE (§ 45*)—DANGEROUS PREMISES—LIABILITY.

An occupant of a building used for business maintained an unguarded elevator shaft. Two doors opened onto the street and extended the whole width of the shaft. There was a two-foot space between the shaft and the doors when closed. A policeman, observing that one of the doors was open after business hours, stepped inside and fell down the elevator shaft, and was killed. *Held* that, though he was a licensee by operation of law, the occupant was not liable at common law for the death.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 60; Dec. Dig. § 45.*]

8. MUNICIPAL CORPORATIONS (§ 76*)—ORDINANCES HAVING THE FORCE OF STATUTES.

The Building Code of the city of New York, expressly ratified by the Legislature after its enactment by the board of aldermen, has the force of a statute.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 181, 687; Dec. Dig. § 76.*]

9. NEGLIGENCE (§ 31*)—DANGEROUS PREMISES—STATUTES—LIABILITY.

New York City Building Code, § 95, providing that elevators in buildings shall be provided with guards which shall be kept closed except when in actual use, and that trapdoors shall be closed at the close of business, etc., expressly ratified by the Legislature, is intended for the protection of police officers on the premises in the performance of official duty, and enjoins a duty on the owner of a building in which an elevator is maintained for the benefit of any person lawfully on the premises, including a police officer, and a failure to close the guards and the trapdoors at night creates a liability for the death of a policeman on the premises in the performance of official duty who fell down an unguarded elevator shaft.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 50; Dec. Dig. § 31.*]

10. ACTION (§ 3*)—STATUTORY REMEDY.

Where the Legislature enjoins a duty and creates a cause of action for its violation, the remedy given by the statute is exclusive, but, where the' Legislature has created a new statutory duty, and a violation thereof results in injury to persons for whose benefit it is intended, a cause of action for damages arises the same as if it were a common-law duty.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 3.*]

Scott and Miller, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Margaret Racine, administratrix of Louis T. Racine, deceased, against Theodore W. Morris and others. From a judgment

for plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Theodore W. Morris, Jr., for appellants.

Clarence J. Shearn, for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of Louis T. Racine, who was a member of the police force of the city of New York, and while in the performance of duty as a patrolman received injuries at about 7:25 o'clock in the evening of the 8th day of December, 1906, through the alleged negligence of the appellants, from which he died. The decedent was patrolling on his beat, which embraced the premises No. 10 Vestry street, and discovered a door leading from the sidewalk into the building ajar, and summoned the patrolman on an adjoining beat, and the two proceeded to search the premises and to secure the door, pursuant to general instructions given to them by their superior officers. The two officers approached the door; the decedent being a few feet in advance of his fellow officer. The door was well ajar. The decedent stepped up to it, pushed it further open, and stepped inside, and, as he did so, he fell out of sight of his companion. The building was dark, and, while this appeared to be a passageway from the street into the building, it was in fact an opening from the sidewalk into an unguarded elevator shaft. The elevator at the time was at the floor above, and the gate at the street floor, instead of being down and barring the entrance, was suspended some distance above the floor and supported by a nail in a post at one corner of the elevator. There were two doors opening onto the street extending the whole width of the shaft of the elevator, one of which folded up in two parts, leading from the elevator onto the sidewalk and evidently extending down to the platform underneath or floor of the building. They were very close to the front of the building. There was a space between the opening into the elevator shaft and the doors when closed of two feet, and evidently the floor or platform which extended to the street under the doors extended back to the elevator shaft. The appellants were in possession of the entire building under a lease for three years, made on the 1st day of May, 1906, and were conducting thereon the business of wholesale dealers in glass. Glass was loaded onto the elevator from trucks in the street through these doors, and was taken to the different stories of the building, and likewise was removed from the building in the same manner. The accident occurred after business hours, and after the employés of the appellants had departed for the day. It is very doubtful, I think, whether the appellants violated any duty which they owed the decedent at common law. He was neither in their employ nor was he on the premises by their invitation, at least not an express invitation. It was his duty as a member of the police force to protect life and property (section 315, Greater New York Charter [Laws 1901, c. 466]), and it appears that he and his fellow officers had received general instructions from their superior officers with respect to premises where doors

were found open, which he was attempting to carry out at the time he lost his life. The court erroneously excluded the rules of the police department imposing duties upon the members of the force with respect to vacant premises; but sufficient appears, and might be inferred if it did not appear, to show that the deceased officer was on the premises in the performance of official duty. He therefore was not a trespasser, and was a licensee, if not by an implied license from the owner, then by operation of law through public necessity, which requires that policemen and firemen in the performance of their duties may lawfully enter upon private premises even against the protest of the owner. Cooley on Torts (3d Ed.) p. 648; Gibson v. Leonard, 143 Ill. 182–190, 32 N. E. 182, 17 L. R. A. 588, 36 Am. St. Rep. 376.

The general rule of law now well settled in this jurisdiction is that the owner of private premises owes no duty of active vigilance to a mere licensee upon his premises without invitation express or implied; and does not owe to him the duty of even ordinary care with respect to the condition of his premises or buildings or other structures or machinery thereon. Nicholson v. Erie R. R. Co., 41 N. Y. 525; Sutton v. N. Y. C. & H. R. R. Co., 66 N. Y. 243; Larmore v. Crown Point Iron Co., 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718; Sterger v. Van Sicklen, 132 N. Y. 499, 30 N. E. 987, 16 L. R. A. 640, 28 Am. St. Rep. 594; Cusick v. Adams, 115 N. Y. 55, 21 N. E. 673, 12 Am. St. Rep. 772; Victory v. Baker, 67 N. Y. 366; Splittorf v. State, 108 N. Y. 205, 15 N. E. 322. He does, however, owe the duty to such a licensee, not only to refrain from either intentionally or willfully injuring him while thus lawfully on the premises, but he is liable for personal injuries caused by affirmative acts of negligence on his part or on the part of his employés which result in injury to such licensee. Byrne v. N. Y. Cent. & H. R. R. Co., 104 N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512; Barry v. N. Y. Cent. & H. R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377; Walsh v. F. R. R. Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615. Both as to such licensees and even as to those who are innocently but technically trespassers upon his premises, he owes the further duty to refrain from setting pitfalls, spring guns, or traps, or having machines inherently dangerous or vicious animals loose upon the premises, as the law values human life too highly to permit a property owner to thus endanger the lives of persons lawfully or accidentally upon his premises, even though the purpose of the owner was to protect his property against trespassers. Larmore v. Crown Point Iron Co., supra. It is quite clear, I think, that under none of these rules of law is a liability established against these appellants. Another rule of law is that no person is at liberty to construct, maintain, or suffer a dangerous excavation on his premises in close proximity to a public way by which those lawfully using the public way and in the exercise of proper care may receive injuries therefrom (Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175), but, as the officer did not go upon the premises accidentally while in the exercise of his right to use the public way, it is difficult to perceive how there would be a liability arising upon this theory because a duty may only be invoked by those for whom it is enjoined. Harty v. Central

R. R. Co. of New Jersey, 42 N. Y. 468. An owner of property used for business purposes is under a duty to those lawfully coming upon the premises to exercise reasonable care to keep the approaches to his office or place of business in a reasonably safe condition for travel (Larkin v. O'Neill, 119 N. Y. 221, 23 N. E. 563; Hart v. Grennell, 122 N. Y. 371, 25 N. E. 354; Macauley v. Mayor, 67 N. Y. 602; Mc-Rickard v. Flint, 114 N. Y. 222, 21 N. E. 153); but the police officer was not a customer, and he was not entering the premises on business of the appellants. He was there in the performance of a public duty which might have incidentally concerned the appellants, as, for instance, if people were wrongfully on the premises for the purpose of setting a fire or committing burglary or any other crime, or liable to come there for any such purpose during the remaining part of the night. Thompson, in his Commentaries on the Law of Negligence (vol. 1, § 981), apparently considers certain cases decided by the Supreme Judicial Court of Massachusetts as establishing the rule that a policeman in the performance of his duty enters upon private premises by an implied invitation, but the cases cited do not I think fully sustain that proposition. There are numerous decisions of the courts of this state to the effect that firemen on private property in the performance of their duties are mere licensees. Eckes v. Stetler, 98 App. Div. 76, 90 N. Y. Supp. 473; Baker v. Otis Elevator Co., 78 App. Div. 513, 79 N. Y. Supp. 663. There is no logical distinction between the rights of a fireman and a policeman on private premises in the performance of duty, and I am of opinion that they are both licensees by operation of law, but may not be said to be upon the premises by invitation of the owner, express or implied.

This leads to the conclusion, therefore, that this action cannot be sustained upon the principles of the common law. I am of opinion, however, that it can be sustained upon the theory that the Legislature by authorizing the enactment of the Building Code by the board of aldermen of the city of New York and by subsequently ratifying the provisions thereof has added to the duties which the defendant owed to the decedent at common law a further duty which they violated and upon which negligence may be predicated. Section 95 of the Building Code provides as follows:

"In any building in which there shall be any hoistway or freight elevator or wellhole not inclosed in walls constructed of brick or other fireproof material and provided with fireproof doors, the openings thereof through and upon each floor of said building, shall be provided with and protected by a substantial guard or gate and with such good and sufficient trapdoors as may be directed and approved by the department of buildings; and when in the opinion of the commissioner of buildings having jurisdiction, automatic trapdoors are required to the floor openings of any uninclosed freight elevator, the same shall be constructed so as to form a substantial floor surface when closed and so arranged as to open and close by the action of the elevator in its passage either ascending or descending. The said commissioner of buildings shall have exclusive power and authority to require the openings of hoistways or hoistway shafts, elevators and wellholes in buildings to be inclosed or secured by trapdoors, guards, or gates and railings. Such guards or gates shall be kept closed at all times, except when in actual use, and the trapdoors shall be closed at the close of the business of each day by the occupant or occupants of the building having the use or control of the same."

We are not concerned with the question as to whether there was legislative authority for the enactment of this Building Code by the board of aldermen, or whether, as a mere enactment of the board of aldermen, a duty could be imposed, the failure to perform which would give rise to a cause of action upon which question the decisions are not in accord (see Fuchs v. Schmidt, 8 Daly, 317, City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760, and Koch v. Fox, 71 App. Div. 288, 75 N. Y. Supp. 913), for, after its enactment, the Legislature expressly ratified it, and it now has the force and effect of a statute (City of New York v. Trustees, 85 App. Div. 355, 361, 83 N. Y. Supp. 442, affirmed on opinion below 180 N. Y. 527, 72 N. E. 1140; Kenney v. Brooklyn Bridge Stores Co., 121 App. Div. 684, 106 N. Y. Supp. 421). This elevator shaft was not inclosed by brick walls or walls constructed of other fireproof material, and it had no fireproof doors. It therefore falls within the other provisions of the section. It is evident from the provisions of this section of the Building Code that it was intended for the protection of policemen, firemen, and others lawfully on the premises, and the duty is expressly enjoined upon the occupant of the building having the use and control of the same to see that the guards or gates shall be kept closed at all times except when in actual use, and that the trapdoors shall be closed at the close of business each day. This enactment, I think, enjoined a duty on the part of the appellants for the benefit of any person lawfully upon the premises. The board of aldermen and the Legislature had in mind that policemen and firemen might lawfully be called to the premises in the performance of their duty, and receive injuries which these provisions of the law were intended to guard against. Where the Legislature enjoins a duty and creates a cause of action for its violation, then the remedy given by the statute is exclusive (Eckes v. Stetler, 98 App. Div. 76, 90 N. Y. Supp. 473), but in the case at bar a duty has been enjoined, and neither the local nor the state Legislature has attempted to prescribe a remedy in so far as it relates to redress for personal injuries. There are many cases, however, where there is no violation of a common-law duty in which the Legislature has imposed a further statutory duty, and a violation of such duty resulting in injury to persons for whose benefit it was intended is regarded as giving rise to an action for damages, the same as if it were a common-law duty.

Such are the actions for damages caused by a failure to perform the statutory duty of erecting and maintaining fire escapes (Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536; Pauley v. S. G. & L. Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194; Huda v. American Glucose Co., 154 N. Y. 474, 48 N. E. 897, 40 L. R. A. 411), failure to conform to the requirements of law with respect to guarding elevator shafts (McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153) and the violation of a duty imposed by the labor law and the employer's liability act (Consol. Laws, c. 31) so called. The only apparent exceptions to this rule arise on the construction of the statutes with respect to the persons for whose benefit the same were enacted. Such are the

cases holding that an abutting property owner is not liable to a person injured or liable over to the city for his failure to construct or repair or remove snow and ice from a sidewalk. City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760; Moore v. Gadsden, 93 N. Y. 12; Village of Fulton v. Tucker, 3 Hun, 529. The decisions in those cases go upon the theory that the primary duty of keeping the sidewalks in repair and free from dangerous accumulations of snow and ice rest upon the municipality, and that the Legislature did not intend to shift that primary duty to the property owner, but merely to render him liable to a fine or to an action for reimbursement for the expense of doing the work. Here, as I view the provisions of the Building Code in question, they constitute not merely a police regulation, a violation of which is punishable merely by a fine, but that it was intended to enjoin a duty for the benefit of those lawfully upon the premises. There is an apparent conflict in authority in other jurisdictions on this precise question, but it will be found on examination to arise on the construction of statutes rather than on the authority to enact them. In Rhode Island it has been held that the failure to perform such a statutory duty does not give rise to a cause of action in favor of a fireman (Beehler v. Daniels, 19 R. I. 49, 31 Atl. 582), but the theory of the decision is that the duty was not enjoined for the benefit of firemen. Likewise, upon the same theory, it has been held in Illinois (Gibson v. Leonard, 143 Ill. 182, 32 N. E. 182, 17 L. R. A. 588, 36 Am. St. Rep. 376) that an ordinance with respect to an elevator was not intended for the benefit of firemen, and that its violation did not give rise to a cause of action. On the other hand, it has been held in Massachusetts on facts not distinguishable from those in the case at bar that a similar statutory provision was intended for the benefit of policemen lawfully attempting to come upon the premises, and that a failure to comply therewith was a failure to perform a duty, the neglect to perform which gives rise to a cause of action. Parker v. Barnard, 135 Mass. 116, 46 Am. Rep. 450. See, also, Learoyd v. Godfrey, 138 Mass. 315. The case of McRickard v. Flint et al., 114 N. Y. 222, 21 N. E. 153, while not exactly in point on the facts, tends to support the theory of liability in this case. There the plaintiff called at the defendant's factory to see one of the defendants on business. It does not appear just what the business was. It is possible that the circumstances were such that there was an implied invitation, but the court did not decide the case upon that theory. It held that a statute requiring the protection of the openings leading to the elevator on each floor and that trapdoors be provided and be closed when the elevator was not in use was designed for the benefit of any person lawfully upon the premises, and that its violation constituted prima facie evidence of negligence upon which a recovery could be had. Of course, the violation of the statute does not create a cause of action in the sense that a recovery may be had on account of the mere violation. It imposes a duty, a violation of which is prima facie evidence of negligence, and, while not conclusive, is sufficient to take a case to the jury and to sus-

tain a recovery upon the theory of negligence.   No other point requires consideration.

I am of opinion, therefore, that the judgment is right and should be affirmed.

INGRAHAM, P. J., and CLARKE, J., concur.

SCOTT, J. (dissenting).   This is an appeal from a judgment for damages for the death of plaintiff's intestate, who was a policeman in the city of New York.   The appellants are the lessees and occupants of a building known as No. 10 Vestry street, in which they carried on a wholesale glass business.   At one corner of this building there was an elevator shaft, entirely separated and inclosed from the rest of the building by wooden and glass partitions, extending from the basement to the top floor, and in which there were doors leading from the shaft to the several floors of the building.   At the street level there were doors the whole width of the shaft leading from it to Vestry street, but not otherwise furnishing access to the interior of the building.   The elevator was used for the purpose of receiving and shipping freight, and transporting it from one floor of the warehouse to another.   On December 8, 1906, when patrolling his beat, between 7 and 8 o'clock in the evening, the deceased noticed that one of the doors leading from the street into the elevator shaft was ajar.   He apparently did not know where the door led, and doubtless supposed that it led into the building, for he pushed the door open and stepped through it, being precipitated to the bottom of the shaft, and receiving the injuries from which he died.   At this time the building was vacant and unlighted, and had been for some hours.   The elevator car or platform was standing at the second story; the power, which was furnished from outside, having been turned off.   A gate had been provided to guard the entrance to the shaft from Vestry street when the doors were opened.   This gate was so arranged that it could be pushed up, out of the way, and, when so pushed up, was kept in place by a wire nail stuck into the woodwork, which could be easily removed when it was desired to lower the gate. At the time of the accident the gate was pushed up and secured. There is no question as to how the accident happened, nor as to the reasonableness of the verdict; the only question being whether upon the undisputed facts the plaintiff is entitled to recover.

It must be conceded that, under the circumstances, no liability would attach to the defendants at common law.   Admitting that plaintiff was acting in the line of his duty and therefore was not a mere trespasser, it cannot be said that he went upon the premises by invitation, or that he was, at the best, more than a licensee.   Cooley on Torts (3d Ed.) p. 1268; Baker v. Otis El. Co., 78 App. Div. 513, 79 N. Y. Supp. 663; Eckes v. Stetler, 98 App. Div. 76, 90 N. Y. Supp. 473.   The plaintiff insists, however, that, even if the common law imposed no duty upon the owner of the premises to keep them safe for the benefit of mere licensees, yet the Building Code of the city of New York does impose such an obligation, and that its violation justifies the present judgment.

The following is the section of the Code relied upon:

"Sec. 95. In any building in which there shall be any hoistway or freight elevator or wellhole not inclosed in walls constructed of brick or other fireproof material and provided with fireproof doors, the openings thereof through and upon each floor of said building, shall be provided with and protected by a substantial guard or gate and with such good and sufficient trapdoors as may be directed and approved by the department of buildings; and when in the opinion of the commissioner of buildings having jurisdiction, automatic trapdoors are required to the floor openings of any uninclosed freight elevator, the same shall be constructed so as to form a substantial floor surface when closed and so arranged so as to open and close by the action of the elevator in its passage either ascending or descending. The said commissioner of buildings shall have exclusive power and authority to require the openings of hoistways or hoistway shafts, elevators and wellholes in buildings to be inclosed or secured by trapdoors, guards or gates and railings. Such guards or gates shall be kept closed at all times, except when in actual use, and the trapdoors shall be closed at the close of the business of each day by the occupant or occupants of the building having the use or control of the same."

This ordinance was adopted by the board of aldermen pursuant to legislative authority. Chapter 378, Laws 1897, § 647; chapter 466, Laws 1901, § 407; chapter 628, Laws 1904, § 2. Similar provisions enacted in prior acts of the Legislature were repealed (chapter 547, Laws 1874, § 5; chapter 410, Laws 1882, § 453; chapter 275, Laws 1892, § 28), and the Building Code thereafter had the same force within the corporate limits of the city as a statute passed by the Legislature. City of New York v. Trustees, 85 App. Div. 355, 83 N. Y. Supp. 442, affirmed on opinion below 180 N. Y. 527, 72 N. E. 1140; Kenney v. Brooklyn Bridge Stores Co., 121 App. Div. 684, 106 N. Y. Supp. 421. It is, however, not a statute, but merely a municipal ordinance. Schnair & Co. v. Grigsby, 132 App. Div. 854, 117 N. Y. Supp. 455. It is not necessary to consider whether a municipality may by ordinance create a right of action between individuals, because the ordinance in question does not purport or undertake to do so. It imposes a duty upon the occupants and owners of certain premises, and specifies the penalties that shall attach in case of violation. See sections 156–158, Building Code. It is well settled, of course, that, where a duty exists irrespective of the ordinance, the violation of an ordinance enacted to regulate the performance of that duty is competent evidence of negligence in such performance. The question at issue therefore turns upon whether or not, irrespective of the ordinance, the appellants owed to deceased any duty of safeguarding their premises. That question seems to be answered so far as this department is concerned by Eckes v. Stetler, supra. In that case a fireman who was upon the defendant's premises in the lawful performance of his duty of extinguishing fires was injured in consequence of the failure of the defendants to comply with a statute (chapter 410, Laws 1882, § 453) requiring all hoistways, wellholes, trapdoors, and iron shutters to be closed at the completion of the business of each day. The statute expressly provided for compensation to be paid in case any officer of the fire department should be killed or injured in consequence of a failure to obey the requirement of the act, such compensation to be recovered "in an action instituted by said board" (of fire commissioners). The plaintiff elected to sue in his own behalf, and not through

the fire commissioners, and this squarely raised the question whether the law gave him a right of action other than the vicarious right especially prescribed. This court held that it did not; that, aside from the statute, the defendant owed him no duty to safeguard the interior of the building; that the statute imposed no such duty as between the plaintiff and the defendant which of itself gave a right of action; and that since, apart from the statute, it was not culpably negligent to leave the hoistway uncovered, the failure to cover it, although contrary to law, was not evidence of negligence. That no common-law duty rests upon an owner of a building to take any particular steps to protect a licensee who comes upon it without invitation was also held in Baker v. Otis Elevator Company, 78 App. Div. 513, 79 N. Y. Supp. 663.

There are undoubtedly cases in which the failure to observe a law or ordinance similar to the ordinance invoked herein has been deemed to be an important element of a right to recover, but in each one, at least so far as concerns this state, there has been, back of the violated law, a duty to the person injured, and the violation of the law has been considered evidence of the failure to perform that duty. In McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153, the plaintiff was upon defendants' premises pursuant to an implied invitation, coming there during business hours upon a matter of business. To him the defendants owed a common-law duty of care, and the violation of the statute was evidence of a failure to observe that duty. So in Pauley v. Steam Gauge & Lantern Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194, the defendant owed to its employés the duty of furnishing reasonably safe means of egress, and the requirement that fire escapes should be provided was one regulating the performance of that common-law duty, and its disobedience constituted negligence in that regard. The same distinction is to be observed in all of the cases relied upon by the plaintiff. From a comparison of the cases cited upon both briefs, we are impelled to concur with the proposition contended for by the appellants that the violation of the ordinance (assuming it to have all the force of a statute) will furnish evidence of the violation of a common-law duty, but that it is the neglect of such duty, and not the violation of the ordinance, which gives rise to the cause of action. Consequently, if there be no common-law duty, no cause of action can be predicated upon the violation of the ordinance.

It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellants to abide the event.

MILLER, J., concurs.