HARRY JAFFY, as Administrator of the Goods, Chattels and Credits Which Were of HYMAN JAFFY, Deceased, Plaintiff, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Defendant.

Supreme Court, Westchester Trial Term, February, 1922.

**Nuisance — attractive nuisance — reservoir built by railroad within village limits — high board fence inclosure — drowning of boy going on premises to fish — when no recovery allowed for his death.**

Upon its own land within the corporate limits of the village a railroad company built near the street line a reservoir about thirty-five feet by forty feet with perpendicular walls and with a depth on one side of about ten feet. A closed board fence about six feet high was erected upon the top of and around the reservoir and on the westerly side was a door which locked by a hasp and padlock. This door, which could be plainly seen from the street, was allowed to get out of repair; one of the hinges was off, the hasp and lock broken, and the door swung on one hinge, thus leaving an opening of sufficient size to permit the entry of persons without disturbing the door in its then condition. One day, after several boys had entered the opening with tackle to fish, plaintiff's intestate, a boy about eight years of age, passed through the open door with fishing tackle and after asking the other boys for some bait which they refused, he went to the deep side of the reservoir. There was evidence tending to show that instead of fishing he was scaring the fish with his pole; that in throwing his line back the hook caught in the fence and in pulling it from the fence the line broke and he fell into the reservoir in which there were four or five feet of water, and was drowned. It also appeared that there was a solid masonry wall twelve feet high on the southwest corner and twenty feet high on the lower southeast corner about the reservoir. In an action to recover damages alleged to have been caused through the negligence of defendant both parties at the close of the case moved for the direction of a verdict. *Held,* that upon the facts plaintiff was not entitled to recover and defendant's motion will be granted and judgment entered accordingly.

ACTION to recover for death.

*Joseph E. Merriam (Harrison T. Slosson,* of counsel), for plaintiff.

*John F. Brennan (Phillip J. O'Brien,* of counsel), for defendant.

MORSCHAUSER, J. This is an action to recover damages arising out of the death of the plaintiff's intestate alleged to have been caused through the negligence of the defendant. At the close of the case both the plaintiff and the defendant moved for the direction of a verdict.

Supreme Court, February, 1922.                    [Vol. 118

In 1879 the defendant purchased a plot of land on West Main street in the village of Mount Kisco of about seventy-one feet by sixty-five feet.   Upon this property the defendant built a reservoir near the street line and erected a solid masonry wall about twelve feet high on the southwest corner and twenty feet high on the lower southeast corner.   Inside this land the defendant built a masonry reservoir about thirty-five feet by forty-five feet and about ten feet deep on one side, the sides of the reservoir being a perpendicular wall.   The purpose of the building of the reservoir was to supply water to the locomotives of the defendant.   The defendant erected on the top of and around the reservoir a closed board fence about six feet high.   On the westerly side there was a door, the size of an ordinary door, hanging upon two hinges and fastened and locked by a hasp and large padlock.   At the time the railroad was double tracked other provisions were made for the water supply for the engines.   Thereafter the water from this reservoir was used by the defendant only for the operation of toilets in the passenger station.   The village was authorized to use one hydrant from the reservoir for fire purposes and upon one occasion that was so used.   At the time the reservoir was built two hydrants were placed in the village street, at which time the village had no supply of water, and the firemen's hose was attached to one of these hydrants.   For some time prior to this accident the gate of the west fence of the reservoir was allowed to be out of repair. One of the hinges was off, the hasp and lock broken and the door allowed to swing open on the lower hinge, leaving an opening of sufficient size to permit the entry of persons without disturbing the door in its then condition.   West of the reservoir was a passageway some feet from it used for pedestrians and vehicle traffic, by people who went there for camping and other purposes.   The door leading into the reservoir could be plainly seen by people passing on the main street.   There was some evidence that boys at some time went to fish in the reservoir for gold fish.   The interior of the reservoir, by reason of the fence and its height, could not be seen from the highway.

On the day of the accident three boys entered through the open door with fishing tackle to fish.   And the plaintiff's intestate entered through the open door with a fishing rod, hook and line. He was about eight years of age.   He asked the boys for bait, which they refused.   He then went to the other side of the reservoir, the deep side.   There is evidence that the boy was not fishing but was scaring the fish with his pole; that he threw the line back and the hook caught in the fence and in pulling the hook from the fence the line broke and he fell into the reservoir and disappeared.

The other boys tried to rescue him with fishing poles, but after coming to the surface two or three times, he disappeared and later his body was found in the water. At this time there were four or five feet of water in the reservoir. The sides of the reservoir were such that it was impossible for a small boy falling in to get out.

The plaintiff asks the court upon this state of facts to direct a verdict for the plaintiff on the ground that the reservoir was an attractive nuisance, because by reason of its peculiar nature and character it allured and attracted the young toward it, appealing to the natural instincts of youth of an inquisitive mind.

The owner of land is not bound by the common law to fence his land. *Beck* v. *Carter*, 68 N. Y. 283. Nor is the owner under any obligation to make the same safe or to keep it in any particular condition for the benefit of trespassers, or mere volunteers, or bare licensees, or persons coming upon it without his invitation, express or implied, except that he must not set traps for them or injure them intentionally, wantonly or recklessly. *Kleinberg* v. *Schween*, 134 App. Div. 493; *Racine* v. *Morris*, 136 App. Div. 467; *Birch* v. *City of New York*, 190 N. Y. 397.

There is a rule of liability where there is a change in the conditions of the land adjacent to a public highway so as to endanger the safety of travelers, who might without fault on their part accidentally stray from the highway.

The learned counsel for the plaintiff cites and relies on the case of *Sioux City & P. R. Co.* v. *Stout*, 17 Wall. 657. This case has received a great deal of attention by the courts in the various states, but the rule of liability therein has not received the approval of the courts in this and many other jurisdictions.

In *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301, the defendant owned a plot of land in the city of Troy on which were railroad tracks and a turntable built in the usual manner and in good repair with its platform elevated above the surface of the ground. The only way to approach it on the level was by means of the tracks. A portion of the premises was unfenced and the public had for a number of years been accustomed to cross the lot from one street to another. The footpath thus worn ran within fifteen or twenty feet of the turntable. Plaintiff's child, five years, nine months old, went upon the plot in company with other boys, was playing upon the turntable. In turning around his leg was caught between the rail on the table and that of a track leading to it.

In an action to recover damages it appeared that though turntables might be fastened, when not in use, so that people could not turn them, they were not usually so constructed. The plaintiff had judgment upon a verdict. It was reversed in the Court of

**150** JAFFY *v.* NEW YORK CENTRAL & HUDSON RIVER R. R. CO.

Supreme Court, February, 1922.                    [Vol. 118

Appeals, Judge Peckham writing the opinion, and the learned judge at page 305 said: "The plaintiff was not on the land by invitation of the defendant nor in its business, but for his own purposes totally disconnected with the defendant's business. He was not a trespasser in the sense of his being unlawfully upon the premises, because the defendant, by its course of conduct, had impliedly granted a license to the public to use the land for the purpose above mentioned. This license, of course, could at any time have been revoked, and then any one going upon the land would have been a trespasser. But under the circumstances, treating the plaintiff as an adult, and simply upon the question of the invitation held out to him, he was there by sufferance only. The defendant had no right intentionally to injure him, and it would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or by failing to exercise reasonable care, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience. (*Nicholson* v. *Erie R'way Co.*, 41 N. Y. 525; *Byrne* v. *Railroad Co.*, 104 id. 363; *Splittorf* v. *State of New York*, 108 id. 205; *Cusick* v. *Adams*, 115 id. 55.) We think there is no proof whatever that the defendant, so far as its duty to plaintiff is concerned, failed to exercise reasonable care in the conduct of its business with regard to this machine.

"We are of the opinion that the defendant has not been shown guilty of a violation of its duty, nor has a question been made for the jury in that respect by proof that it used the turntable in the manner it did. It is true that some means might have been adopted which possibly might have prevented the happening of this accident. The proof is that turntables are not generally constructed with bolts for the purpose of keeping them steady. Such bolts do not come with the table from the factory. Nothing of that kind is essential to the machine or for its legitimate and proper use. The table might have been kept so fastened or locked when not in use that people could not turn it without unfastening or unlocking it, and the defendant might even have built a wall around it so high and guarded it so closely as to prevent any access to it by children at any time. But was defendant bound to do so? Did it owe any such duty to the public or to this plaintiff? The turntable was on its own land; it was used by the defendant for the sole purpose of properly conducting its own business; it was a fit and proper machine for that purpose; it was not of the nature of a trap for the unwary; it was not built in any improper or negligent way with reference to the transaction of the business of the

defendant. What further duty did it owe to those who had no business upon its land, who came there unasked and whose presence was simply tolerated?

" Upon the question of alluring plaintiff, we do not think it can be correctly said defendant either enticed or allured him to come upon its land.

" The whole case in this aspect rests upon the doctrine that the turntable was, as to children of tender years, a dangerous and at the same time an enticing machine, one which, when seen, would inevitably and infallibly allure children to come upon it for the purpose of playing upon it, and that the natural and probable result of such play would be the injury of the child. Under such circumstances it is claimed that a person owning such a machine, although it be used on his own land, is bound to exercise extra vigilance for the purpose of preventing injury to children who come upon the defendant's land allured by the machine and ignorant of its dangers. We do not think the facts of this case bring it within any such principle. The leading case in this country, and one which undoubtedly sustains the plaintiff's contention that it is a case for the jury is that of *R. R. Co.* v. *Stout* (17 Wall. 657). That case has been followed in many states. In Missouri (*Koons* v. *R. R. Co.*, 65 Mo. 592); in Kansas (*Ry. Co.* v. *Fitzsimmons*, 22 Kans. 686; S. C., 31 Am. Rep. 203, reporter's note at p. 206); in California (*Barrett* v. *So. Pacific Co.*, 91 Cal. 296) and in some other states. The contrary principle has been announced and held in *Daniels* v. *R. R. Co.* (154 Mass. 349) and *Frost* v. *Eastern R. R. Co.* (64 N. H. 220).

" We think the better rule is laid down in the two cases last cited. We do not assert that the defendant owed no duty to the plaintiff under the circumstances existing, but we think it did not owe the duty of such active vigilance as would be necessary to exist in order to send the case to the jury and permit it to find the defendant guilty of negligence in this case. The court, in *McAlpin* v. *Powell* (70 N. Y. 126) while distinguishing it from the *Stout Case* (*supra*), expresses doubt of the correctness of the application of the principle in the latter case."

In *Fogarty* v. *L. I. R. R. Co.*, 30 App. Div. 624, the intestate was a child two years and eight months old. It was found crushed on a side track of defendant's railroad within the lumber yard of the defendant Carpenter. The yard was adjacent to plaintiff's premises. Opposite to a large hole in the fence and about seventy-five feet was the wash house on plaintiff's premises where intestate was left by its mother. The child entered the premises through the hole in the fence near or upon the side track or switch therein

and was crushed by a car or cars owned and operated by defendant railroad company. Complaint was dismissed and on appeal the judgment was affirmed, on the authority of *Walsh* v. *Fitchburg R. R. Co., supra.*

Where the city was constructing a sewer in a street and beside the excavation was a pile of sand used for making cement and a boy while playing upon it slid down the side into a trench, the city was held not liable, and the Court of Appeals in *Johnson* v. *City of New York*, 208 N. Y. 77, at page 83, applied the *Walsh Case, supra.*

Where in the construction of a sewer a winch with a drum to which a rope was attached was used to lift stone out of the trench and after the day's work plaintiff while playing with it was injured, defendant was held not liable. *Fitzgerald* v. *Rodgers*, 58 App. Div. 298, and on page 301 citing the *Walsh* case and *Daniels* v. *N. Y. & N. E. R. R. Co., supra.*

In *Shalata* v. *Rodgers*, 189 App. Div. 228, the defendant, a contractor, was engaged in constructing a sewer extending from a street in the city of New York to the East river. While the work was being carried on the plaintiff's intestate, a boy of about six years, left a public recreation ground in the vicinity and went through an opening in the fence inclosing the grounds and went out upon a coffer-dam and fell into the river and was drowned. The complaint was for nuisance and negligence. On the trial the plaintiff succeeded and on appeal the judgment was reversed and complaint dismissed.

There are many cases analogous to the instant case in other jurisdictions where liability was denied.

In *Talty* v. *City of Atlantic*, 92 Iowa, 135, 136, where a child was injured while digging sand when the bank caved in upon him.

*Ratte* v. *Dawson*, 50 Minn. 450, where a child of three years, playing in a pit in an unguarded vacant lot, was killed by the caving in of the bank. In this case children were attracted by the bank, and were accustoned to play there.

*Clark* v. *City of Richmond*, 83 Va. 355, where a child six years of age walked on a wall along the street and fell into a pit.

*Habina* v. *Twin City Electric Co.*, 150 Mich. 41, where a girl nine years of age while crossing the uninclosed lands of the defendant fell in a ditch filled with hot water.

*Stendel* v. *Boyd*, 73 Minn. 53, liability was denied for the drowning of a little boy in a dangerous excavation filled with water on a city lot. The learned Chief Justice Start said at page 55: " The doctrine of the turntable cases is an exception to the rule of non-liability of a landowner for accidents from visible causes to

trespassers on his premises. If the exception is to be extended to this case, then the rule of non-liability as to trespassers must be abrogated as to children, and every owner of property must at his peril make his premises child-proof. If the owner must guard an artificial pond on his premises, so as to prevent injury to children who may be attracted to it, he must on the same principle, guard a natural pond; and, if the latter, why not a brook or creek, for all water is equally alluring to children? If he must fence in his stone quarry after it fills with water, so that children cannot reach it,— a well-nigh impossible task,— why should he not be required to do it before, for a stone quarry, with its steep and irregular sides, might well be an attractive and dangerous place to children? It would seem that there is no middle ground, and that the doctrine of the turntable cases ought to be limited to cases of attractive and dangerous machinery.   *   *   *   Upon the undisputed facts in this case, we hold that the plaintiff cannot recover, for the reason and upon the ground that a landowner is not bound to fence or otherwise guard an open excavation or pond, natural or artificial, on his land, so as to prevent injury to children coming thereon without right or invitation, express or implied, although they are induced so to do by the alluring attractiveness of such excavation or pond."

In *Peters* v. *Bowman*, 115 Cal. 345, liability was denied for the drowning of a boy eleven years of age in a pond on a city lot.

In *Richards* v. *Connell*, 45 Neb. 467, liability was denied in a case of the drowning of an infant in a pond where the lot owners negligently permitted surface water to accumulate until it formed a dangerous pond and they neglected to erect fence or barrier to prevent children lawfully in the vicinity from falling into the pond. The lots were situated within the vicinity of the public school of the city.

In *Hargreaves* v. *Deacon*, 25 Mich. 1, liability was denied where a child fell into an uncovered cistern and was drowned.

In *Klix* v. *Nieman*, 68 Wis. 271, liability was denied where a child nine years of age was drowned in an unfenced pond on a lot in the city of Milwaukee.

In *Ritz* v. *City of Wheeling*, 45 W. Va. 262, liability was denied in a case where a child less than five years of age was drowned in a reservoir maintained by the city to furnish water for public use. In the opinion Chief Judge Brannon (called president) at page 265 says: " There can be no negligence charged upon a person unless he rests under a duty to the person complaining of damage at his hands; for if there is no duty violated, though there may be grave damage befalling the complaining party, he has no ground of action. It is a case denominated in law as ' *damnum absque injuria*,'—

damage done, but without violation of a right in the injured party;—a misfortune unaccompanied by a breach of duty by the party inflicting the injury. (Shearman & Redfield Neg. § 8.)   The reservoir and the land containing it were the private property of the city, used, not as a park or place of public resort or common, but only for reservoir purposes.   The child was a trespasser, if you can say a child can be a trespasser.   It was a trespasser, in legal sense; that is, it was on this property without right.   The city was not bound to watch it.   It could not be liable to it only for wilful or wanton injury."

In *Clark* v. *Manchester*, 62 N. H. 577, Judge Allen said at page 580: " The excavation for a reservoir was not made and filled with water for a trap, but for lawful use by the defendants on their own land.   *   *   *   The averment of license and invitation to the child to go there is one of argument by inference from the facts stated, and the facts positively averred do not warrant and support the inference.   The fact that children went to the reservoir pit from curiosity or for pleasure, without objection of the defendants, was not an invitation nor a license to go there.   The child was not upon the land by invitation, nor under circumstances which made it the duty of the defendants to protect him.   He was there to gratify his curiosity, or for mere pleasure, and the defendants owed him no special duty.   It was not a case of setting a trap for the children, nor one of wantonly and knowingly leading them into danger and this one to destruction.   It was the ordinary case of a land-owner managing, within the boundaries of his own land, his own property in his own way for his own use and benefit; and though in doing this he might find occasion to   *   *   *   construct reservoirs, provide fish ponds, plant and cultivate fruit trees, erect and maintain useful structures, instruments, and machinery, all of which are alluring, attractive, and dangerous to children, yet it could not be claimed that he must constantly guard these things against the approach of persons coming without license or invitation,   *   *   *   ·or suffer in damages for any injury they might receive.   The rule that the owner of land may manage it in his own way for his own benefit, and owes no duty to those who come upon it for no business purpose, but without license, express or implied, is too well established to need further comment, or to warrant a departure from it."

A pond is not to be treated as an attractive danger within the meaning of the turntable cases.   *Smith* v. *Dold Packing Co.*, 82 Mo. App. 9.

In *Sullivan* v. *Huidekoper*, 27 App. Cas. D. C. 154, the owner of an artificial pond is not liable for the drowning of a ten-year-old

boy in it while at play, although it is an attractive place to children.

In *Overholt* v. *Vieths*, 93 Mo. 422, the owner of property is not required to fence an excavation filled with water so as to prevent an eight-year-old boy from falling into it and being drowned.

In *Moran* v. *Pullman Palace Car Co.*, 134 Mo. 641, having an unfenced and unguarded pond on land within a city, the pond being dangerous and attractive to children, who are accustomed to bathe in it to the knowledge of the owner, will not render him liable for the drowning of a nine year old boy who goes there to bathe.

In *Dobbins* v. *Missouri, K. & T. Ry. Co.*, 91 Tex. 60, an unprotected pool of water, it has been held, will not render the owner of premises liable for the drowning of a child therein.   A pool of water, it was declared in this case, is not dangerous to persons of ordinary discretion, nor to children of sufficient discretion to be allowed to go about unattended.

In *Thompson* v. *Railroad Co.*, 105 Miss. 636, a railroad company which had created a shallow lake in the woods near a town by damming a watercourse is not, although it is charged with notice that children resort there to play, liable for the death of a child who, while wading in the lake, steps in a deep hole and is drowned.   See, also, *Akron Water Works Co.* v. *Swartz*, 28 Ohio C. Ct. 627; *Hanna* v. *I. C. Ry. Co.*, 129 Ill. App. 134; *Cooper* v. *Overton*, 102 Tenn. 211; *Schauf's Admr.* v. *City of Paducah*, 106 Ky. 228; *City of Omaha* v. *Bowman*, 52 Neb. 293; *Peninsular Trust Co.* v. *City of Grand Rapids*, 131 Mich. 571; *Newdoll* v. *Young*, 80 Hun, 364; *Frost* v. *Eastern Railroad*, 64 N. H. 220.

In *Greene* v. *Linton*, 7 Misc. Rep. 272, it was held that the owner of vacant lots upon which there is an excavation at some distance from the street, is under no obligation to fence them for the protection of persons not lawfully upon the land, and is not liable for injuries caused thereby to such persons, whether they be adults or infants.   The intestate, a child six years old, was drowned in a cesspool upon vacant lots owned by defendant which were not fenced.   Children were in the habit of playing on the premises, and the intestate was at the time sailing a boat on the pool.   It was held that defendant was not liable and the complaint was properly dismissed.   The learned jurist, Chief Justice Clement, cited a case that arose in Pennsylvania (*Gillespie* v. *McGowan*, 100 Penn. St. 144).   A child was playing on a vacant, unfenced lot in the outskirts of Philadelphia.   There was a deep uncovered well on the property, 80 feet from the road and 300 feet from a paved street.   The child fell in the well and was drowned, and the Supreme Court held that there was no liability on the part of the owner of the lots.   Chief

Justice Clement also cites *Murphy* v. *City of Brooklyn*, 98 N. Y. 642; 118 id. 575; *Maginnis* v. *City of Brooklyn*, 7 N. Y. Supp. 194; affd., 126 N. Y. 644; *Cusick* v. *Adams*, 115 id. 55; *Sterger* v. *Van Sicklen*, 132 id. 499.

There are innumerable places and things that at times attract children. The luring swimming hole; the tempting cultivated fruit trees; the various nut-bearing trees; the fishing pond and pools in open places and lots; creeks and streams; abandoned or vacant barns, buildings and shanties; sand pits, pits and caves; machinery in various places, abandoned or stored or such as one has in use on his own premises; standing cars on railroad tracks or sidings; turntables and engines.

Children go into places and do things of which an adult never even thinks.

If the claim of the plaintiff of the doctrine of attractive nuisance prevailed in this case, occupiers, lessees and owners of property could not escape liability whenever a child entered thereon and suffered death or injury.

Of course, I do not mean to say that there could not be liability where there is a trap set for the children or pitfalls dangerous to them, where active vigilance is demanded, or where there are certain dangerous instrumentalities on the premises, or where the place is quasi-public, or where children are lured or led wantonly and knowingly into danger and thereby suffer injury or death. An owner cannot do an act on his land which is illegal or which may probably endanger human life. In such cases the courts have not hesitated to uphold verdicts rendered by juries.

I do not believe upon the facts in this case and upon the authorities in this and various other jurisdictions that the plaintiff is entitled to recover.

I direct the jury to find for the defendant.

Judgment accordingly.