Kenneth 0. Johnson, Jr., J.
This is a proceeding brought on motion by the defendants for, among other things, the inspection of the Grand Jury minutes and a dismissal of the indictments. For the purpose of simplification and expediency this court has considered only the said motions to inspect and dismiss although there are other motions still pending which, however, may need no determination depending on this decision. Although only one decision, this decision is to be considered the separate decision in each one of the above-captioned cases.
The moving papers of the defendants include summaries of interviews with 16 witnesses who testified before the Grand Jury and who purportedly informed the defendants as to what their testimony covered. The defendants further assert that these digests are a fair sampling of the entire testimony given before the Grand Jury and that such digests indicate that the Grand Jury had legally insufficient evidence to support the indictments. The People oppose the motion basically on the grounds that there is a presumption of regularity that attaches to an indictment and that the defendants have not shown that the testimony of the witnesses not interviewed by defense counsel did not supply sufficient evidence to make out a prima facie case and that the evidence before the Grand Jury was legally sufficient.
While the court under CPL 210.30 (subd. 4, par. [b]) has discretion to inspect the Grand Jury minutes even though there may be no basis or reasonable cause to believe that the evidence may be insufficient, it is considered herewith that the defendants have shown reasonable cause for the granting of the motion to inspect.
The indictments have resulted from a tragedy that occurred in the Town of Ithaca. On the afternoon of Thanksgiving Day, November 25, 1971, three boys drowned in the swimming pool at Lansing Apartments East, an apartment complex located in said town. The apartment complex is owned by Lansing Terrace Apartments, Inc., of which Gerald B. Talandis is the principal stockholder and managing agent. Allen E. Akers is the maintenance man or supervisor of the apartment complex. The swimming pool is for the use of tenants and their guests and is normally open from late May to early September. It is surrounded by a wooden fence equipped with a gate which can be closed and locked when the pool is not in use or operation. The *46 boys, two aged 6 and the third aged 7, were the sons of tenants. Their bodies were found after a search was instituted by their parents when the absence of the children was noticed. The pool had its normal content of water except for about two feet or less that had been drained off for the fall and winter months when the pool is not in use. Surface ice had formed on the pool, but the bodies were found at the bottom of the pool.
The defendant, Allen E. Akers, has been indicted on a charge of reckless endangerment in the first degree (Penal Law, § 120.25). The defendants, Lansing Terrace Apartments, Inc., and Gerald E. Talandis, have each been indicted on the charges of manslaughter in the second degree (Penal Law, § 125.15, subd. 1) together with reckless endangerment in the first degree.
The substance of the statements of the above-mentioned 16 witnesses in the moving papers of the defendants is that children, and others, gained access to the pool from time to time regardless whether the pool was closed and the gate locked; frequently one or more fence boards were missing; from time to time repairs were made; on one occasion a witness reported a fence board missing to the management and was told repairs would be made and he presumed that was done; one or two boards were seen to be absent at 1 or 2 o’clock in the afternoon of the day of the drownings and before the bodies were discovered.
In this court’s opinion the foregoing type of evidence would not be sufficient to support the indictments and, as mentioned, the court therefore found it necessary to inspect the Grand Jury minutes. As a result of such inspection this court believes that the said digests set forth in the motion papers, as summarized above, reasonably reflect the testimony given by the witnesses testifying before the Grand Jury and further finds, as contended by defendants, that the testimony of the other witnesses not interviewed by defendants is substantially similar and adds little or nothing to the legal sufficiency of the indictments.
The indictments charging each defendant with reckless endangerment in the first degree assert that between March, 1971, and November, 1971, the defendants, (1) under circumstances evincing “a depraved indifference to human life”, (2) recklessly engaged in a “ course of conduct ”, (3) which created “ a grave risk of death” to other persons. They assert that the defendants knew the pool fence needed repair, but did not repair it properly, thereby causing a grave risk of death to other persons, especially children. The manslaughter indictments assert that “ the defendants did recklessly cause the death of ” each boy.
*47 Pertinent definitions of the crime charged and the conduct alleged are important. 1‘ Omission ’ ’ is defined as “a failure to perform an act as to which a duty of performance is imposed bylaw”. (Penal Law, § 15.00, subd. 3.) “ Conduct ” is defined as “an act or omission and its accompanying mental state ’ ’. (Penal Law, § 15.00, subd. 4.) The culpable mental state described by the term “ recklessly ” is defined as follows: “ A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation ”. (Penal Law, § 15.05, subd. 3.)
Accordingly then in order to establish the defendants’ guilt of reckless endangerment the People would thus have to prove (1) that the defendant was under a duty imposed by law to keep the pool fence intact; (2) that the defendant with a depraved indifference to human life recklessly omitted to make proper repairs; (3) that the defendant was aware that his failure to make proper repairs created a grave risk that children would drown; and (4) that the defendant knowingly disregarded that risk.
Considering the testimony before the Grand Jury, as well as the statutory law and case precedent, the court is satisfied that for several reasons the indictments should be dismissed.
To begin with, the indictment charging reckless endangerment in the first degree is, in a fundamental respect, not supported by the evidence. The ‘ ‘ reckless conduct ’ ’ specified in the statute refers to a failure to perform a duty imposed by law. The defendants here are charged with omitting to repair the fence properly, but significantly there is no assertion that the law imposed a duty on them to provide a fence in the first place, much less to keep one intact or in repair. Neither was there anything shown or evidenced that the defendants had any such legal duty. No statute, ordinance or regulation requiring a swimming pool to be enclosed by a fence has come to the attention of the court and it may safely be assumed there is none. There is no such duty under common law. At common law, a landlord’s responsibility to trespassers, including infants, “is to refrain from inflicting willful, wanton or intentional injuries ’ ’ upon them. (Beauchamp v. New York City Housing Auth., 12 N Y 2d 400, 405.) There is no claim that that duty was breached or any evidence thereof. Some question may arise as to whether *48 these unfortunate boys were trespassers, but the court must so regard them. The pool was closed and had been closed since early September and its entrance gate locked. Clearly to all residents, adults and children alike, the pool was off-limits until reopened and guarded in the normal season for outdoor swimming pools.
Where there is no duty “ imposed by law ”, there can be no breach of duty. For this reason alone the reckless endangerment charge should be dismissed against Lansing Terrace Apartments, Inc., the owner. Where the owner had no legal duty to perform an act, the owner’s agents likewise could have no such duty. Consequently that charge also should be dismissed as against defendants Akers and Talandis. There was no evidence before the Grand Jury of the commission of any unlawful act.
Defense counsels in their memorandums of law and arguments before this court advise that research as far remote as colonial times reveals no case of an owner being convicted for failing to prevent access to a pool or other body of water. The court’s research was similarly fruitless. It may be true, as the District Attorney urges, that such fact is no ground in itself for, not prosecuting. Nevertheless, the absence of earlier prosecutions is not without interest or significance. The reason may be a commonly held view in cases involving civil liability that the dangers of water in a pond or in a pool are obvious even to a child, especially one old enough to be allowed to play without adult supervision. This view is reflected in the opinion of the court in Stendel v. Boyd (73 Minn. 53) as quoted in Jaffy v. New York Cent. & Hudson Riv. R. R. Co. (118 Misc. 147, 152, 153). Denying recovery for the drowning of a small boy in a dangerous excavation filled with water on a city lot, the court in the Stendel case said “ If the owner must guard an artificial pond on his premises, so as to prevent injury to children who may be attracted to it, he must on the same principle, guard a natural pond; and, if the latter, why not a brook or a creek, for all water is equally alluring to children? If he must fence in his stone quarry after it fills with water, so that children cannot reach it, — a well-nigh impossible task, — why should he not be required to do it before, for a stone quarry, with its steep and irregular sides, might well be an attractive and dangerous place to ■ children? ”
A better reason why there have been no recorded convictions for a crime in cases of this or similar nature is that in the long history of the crimes of reckless .endangerment in the first degree and manslaughter, reaching back as it does to the English common law, it Seems never to have occurred to the authorities *49 or the courts to equate failure to fence a pool or pond with depravity, indifference to human life, criminally reckless conduct, etc. Oases such as Darry v. People (10 N. Y. 120), People v. Darragh (141 App. Div. 408, affd. 203 N. Y. 527) and People v. Jernatowshi (238 1ST. Y. 188) illustrate the types of cases in which such terms were involved. More pertinent to the issue here is the meaning of the word “ recklessly” as used in the manslaughter charges. The term “recklessly” is a synonym or was used interchangeably for the term ‘ ‘ culpable ’ ’ negligence in the former definition of manslaughter in the second degree (former Penal Law, §§ 1052, 1053-a). In a leading case Judge Andrews, for the Court of Appeals, defined the term ‘ ‘ culpable ” negligence as “ something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others ”. (People v. Angelo, 246 N. Y. 451, 457.) Much time could be spent in citing cases in which the term “ culpable ” negligence was applied, but there is no need for that. The applicable law and cases were thoroughly considered and digested in the comprehensive opinion of Judge Nathan E. Sobel in People v. Joseph (11 Misc 2d 219), and pertinent extracts from that opinion are of direct interest here. The Joseph case involved the deaths of six young children resulting from a cave-in during building excavation work. The defendants, the building contractors, were charged with manslaughter, second degree, They were tried without a jury and found not guilty.
First, the court reported that apart from automobile homicides he found not one conviction in New York for a “ lawful act” homicide. Second, he found that automobile homicides, almost without exception, involved “ unlawful acts”, such as drunk driving, reckless driving, speeding, etc. Third, even in unlawful act homicides most courts require proof of such a degree of negligence ■ — “ culpable ”, or “ criminal ”, or “ gross ” as to be the equivalent of criminal intent. Fourth, he found that “ In addition to knowledge of risk creation there must be conscious disregard of a substantial and unjustifiable risk, which in terms of the culpable negligence manslaughter statute, means a risk that death or serious bodily injury will probably (as distinguished from possibly) ensue ” (11 Misc 2d 219, 236). Fifth, “ a person engaged in performing a lawful act is ordinarily not conscious of creating a substantial and unjustifiable risk. Ordinarily therefore, a greater degree of proof of conscious risk creation will be necessary ” (p. 237). The court summarizes the results of his obviously vast research when, *50 referring to what the triers of the fact must find, he states: “ The jury will then be required to determine whether or not the defendant was actually and consciously aware of the fact that by his acts or his omissions he was creating a risk; that the risk created was both unreasonable and unjustifiable under all the circumstances established by the evidence; that for a risk to be both unreasonable and unjustifiable it must involve conduct so highly culpable and blameworthy as to be tantamount or equivalent to an intent to injure another; and that the defendant in disregarding such a risk knew or should have known that the probable (as distinguished from possible) consequences of his conduct would result in death or serious injury to another. And, of course, that all this must be established beyond a reasonable doubt ” (pp. 241-242).
This court considers that the standards as quoted above fully and accurately summarize the law that would have to be applied were these indictments to be tried. The court of course realizes that the circumstances which form the bases of charges necessarily vary from ease to case. However, resolving all possible inferences in favor of the indictments, the evidence merely establishes that on occasion a board or boards were missing from the pool fence; sometimes repair of the fence may have been slow; although a hole in the fence was seen at 1:00 p.m. or 2:00 p.m. on Thanksgiving Day 1971, there was no testimony as to how long it had been there or who caused it or whether the defendants knew it or should have known it. The reckless endangerment indictment asserted that the defendants ’ “course of conduct” put the children in grave danger of death. But the evidence showed that this 1 ‘ course of conduct ” was nothing more than occasional delay in repairing holes — holes which often were remade on the same day repairs were effected. There was no testimony as to how the children got into the pool — just a surmise or inference that they went through the broken or missing boards. They may have climbed over the fence. The various defendants may or may not have been negligent in a civil sense and such a determination of civil liability is not the concern of this court. As stated by Judge Leibowitz of the County Court in Kings County some years ago (1941) in dismissing an indictment for second degree manslaughter arising from the operation of an elevator : 1 ‘ Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, do not constitute culpable negligence.” (People v. Carlson, 176 Misc. 230, 232; see, also, People v. Wells, 186 Misc. 979, 982). The above quote is made *51 without .any indication or suggestion that this court finds or reaches any conclusion regarding such lack of foresight, stupidity, irresponsibility, etc. as such a finding or conclusion is not essential or necessary in this decision. This court merely concludes, among other things, that as a question of law the testimony before the Grand Jury does not show or reveal sufficient legal evidence of recklessness as defined by subdivision 3 of section 15.05 of the Penal Law, a necessary element in both charges, manslaughter in the second degree and reckless endangerment in the first degree.
The evidence before the Grand Jury was not legally sufficient to establish either of the offenses charged and, accordingly, as to each defendant the indictment and charges therein are dismissed.