OPINION OF THE COURT
Francis X. Egitto, J.
The defendants are charged with reckless endangerment in *55 the second degree arising out of a physical altercation with the victim James Kasemeiski, which escalated into tragic consequences. They now move to dismiss the indictment on the ground that the evidence presented to the Grand Jury is not legally sufficient. The primary issue which must be determined by this court is whether a person who causes injury to another has a legal duty to render aid or minimize the risk of further injury where there are others in the immediate vicinity who are willing and able to render assistance. For the reasons which follow, I conclude that the defendants had no such duty, and, accordingly, that the evidence presented to the Grand Jury is legally insufficient to support the defendants’ indictment for reckless endangerment in the second degree.
Although the precise circumstances of the incident are in dispute, the following facts have been summarized from the evidence before the Grand Jury. The defendant John Schmidt is a self-employed carpenter, and the defendant James Galatro is a New York City firefighter. During the early morning hours of Saturday, July 13, 1991, at about 12:30 a.m., the defendants Galatro and Schmidt were at a bar located in the vicinity of Flatbush Avenue and East 46th Street in Brooklyn. Shortly before 1:00 a.m., the defendants left the bar accompanied by two companions. As the defendants crossed 45th Street, they encountered the complainant, James Kasemeiski. Words were exchanged, and the disagreement escalated into a physical dispute.
While conflicting evidence was presented to the Grand Jury as to who struck the first blow, three of the five eyewitnesses testified that the complainant was the initial aggressor. The record establishes, however, that during the altercation, one of the defendants punched the complainant in the face, causing him to fall to the ground. The complainant’s head struck the pavement so forcefully that witnesses heard an audible crack, and the complainant was knocked unconscious by the fall. There is a direct conflict in the evidence regarding which defendant threw the punch. The evidence is also disputed as to whether the complainant was also kicked in the groin, and as to which defendant may have engaged in this conduct.
Immediately after the complainant fell to the ground, one of the defendants’ companions, who was not far behind, ran up in between them to determine the complainant’s condition. At this point, both defendants left the scene, leaving the complainant lying in the middle of Flatbush Avenue. The defendant’s companion checked the complainant’s pulse, and saw *56 that he appeared to be seriously injured. He was then joined by other individuals filtering out of the bar, and a crowd of 20 to 30 persons formed, including an off-duty transit police officer who had witnessed the incident and immediately phoned for assistance. The defendant’s companion ran to a firehouse located two blocks away from the scene, where he summoned assistance for the victim. The police arrived within five minutes of the incident, and were on the scene by the time the defendant’s companion returned. Members of the fire department arrived soon thereafter, and attempted to give the complainant oxygen. The complainant was taken to the hospital, where part of his brain tissue was removed. He has suffered permanent brain damage as a result of this incident.
The defendants were subsequently arrested and charged with attempted murder in the second degree. Both defendants, as well as five eyewitnesses to the incident, testified before the Grand Jury. On July 29, 1991, the Grand Jury was asked to consider the charges of assault in the second degree (intentionally causing serious physical injury), assault in the third degree (recklessly causing physical injury), and reckless endangerment in the second degree against each defendant. Justification was charged as a defense.
The Grand Jury dismissed the intentional and reckless assault charges, but voted a true bill as to the charge of reckless endangerment in the second degree. The indictment contains the identical language used in the charge to the Grand Jury. It accuses the defendants of "recklessly engaging] in conduct which created a substantial risk of serious physical injury to another person in that the defendants did leave an injured person on a trafficked roadway.”
By notice of motion dated November 19, 1991, the defendant Schmidt moved to dismiss the indictment on the ground that the evidence presented to the Grand Jury was legally insufficient to support the charge of reckless endangerment in the second degree. The defendant Galatro subsequently moved for the same relief. Following review of the Grand Jury minutes, this court ordered the prosecution to provide copies of the minutes to both defendants with its opposition papers. The People subsequently submitted an affirmation in opposition to the defendant’s motion on December 20, 1991.
On a motion addressed to the sufficiency of an indictment (CPL 210.20 [1] [b]), a defendant is entitled to a review based on whether there is competent evidence which, if accepted as *57 true, establishes every element of the offense charged and the defendants’ commission of it (CPL 70.10; see also, People v Mikuszewski, 73 NY2d 407, 411; People v Jennings, 69 NY2d 103, 115). The sufficiency of the People’s presentation is determined by inquiring whether the evidence, viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury (see, People v Jennings, supra, at 114; People v Pelchat, 62 NY2d 97, 105; People v Flores, 122 AD2d 806).
The court must also take into account the fact that a no true bill was voted as to both the intentional and reckless assault counts. While this court cannot speculate as to the reason why the Grand Jury dismissed the assault counts, neither can it ignore the fact that the Grand Jury found legally insufficient evidence that the defendants either intentionally caused serious physical injury to the complainant or recklessly caused physical injury to him. Since the seriousness of the injuries sustained by the complainant is undisputed, the Grand Jury may have concluded that the defendants’ conduct was justified. A second possibility is that the Grand Jury was uncertain as to which defendant struck the blow which knocked the complainant to the ground. A third explanation is that the Grand Jury found that the defendants did not act with the required mens rea, that is, intentionally or recklessly.
Under any of the above scenarios, it is clear that the Grand Jury found legally insufficient evidence that the defendants’ conduct in striking the complainant constituted an intentional or reckless assault. Significantly, neither the indictment nor the charge presented to the Grand Jury makes any reference to the defendants’ conduct prior to leaving the complainant on the roadway. Thus, while this court must examine the totality of the circumstances in evaluating the sufficiency of the evidence that the defendants committed the crime of reckless endangerment in the second degree, the defendants’ conduct in striking the complainant cannot serve as the sole predicate for such a finding.
A person is guilty of reckless endangerment in the second degree when he "recklessly engages in conduct which creates a substantial risk of serious physical injury to another person” (Penal Law § 120.20). The Penal Law defines conduct as "an act or omission and its accompanying mental state” (Penal Law § 15.00 [4]). The conduct described in the indictment, namely, "leavpng] an injured person on a trafficked roadway,” constitutes an omission. An omission is defined as "a failure to *58 perform an act as to which a duty of performance is imposed by law” (Penal Law § 15.00 [3]).
It is important to emphasize that this is a legal, as opposed to moral, duty. A person is not responsible for an omission unless a duty is imposed by law (Penal Law § 15.00 [3]; People v Steinberg, 170 AD2d 50; Lipsius v White, 91 AD2d 271; Burton v Brooklyn Doctors Hosp., 88 AD2d 217, 225-226; People v Robbins, 83 AD2d 271; People v Northrup, 83 AD2d 737; People v Gladden, 118 Misc 2d 831; People v Lansing Terrace Apts., 70 Misc 2d 44). However, while the reckless endangerment count set forth in this indictment is based on an alleged omission, no evidence was presented to the Grand Jury that the defendants breached a legal duty owed to the complainant, that is, one imposed by law. This court is aware of no statute, ordinance, regulation or case, which requires the defendants to summon help on the complainant’s behalf, and no such duty appears in the common law (see, People v Robbins, 83 AD2d 271, supra; People v Lansing Terrace Apts., 70 Misc 2d 44, supra; cf., People v Northrup, 83 AD2d 737, supra; People v Steinberg, 170 AD2d 50, supra; Lipsius v White, 91 AD2d 271, 280; Burton v Brooklyn Doctors Hosp., 88 AD2d 217, 225-226, supra).
Both cases cited by the People for the proposition that the defendants owed a legal duty to the complainant are distinguishable, since they involved affirmative acts and not mere omissions. In People v Kern (75 NY2d 638), the defendants were convicted of reckless manslaughter because they chased the complainant onto a six-lane highway where he was struck by an automobile. Similarly, in People v Kibbe (35 NY2d 407), the defendants engaged in unlawful conduct prior to leaving an intoxicated robbery victim on a two-lane highway. There, the defendants robbed the victim, left him without his eyeglasses, and forced him to roll down his trousers and take off his shoes to be certain he had given up all of his money. The defendants’ conviction for depraved murder was based on their affirmative acts prior to leaving the victim on the roadway, and not simply an omission as the case at bar.
The defendants here, however, are not charged with an affirmative act of recklessness and there is no evidence that the defendants owed a legal duty to the complainant, which would support a finding of a legal omission. "Where there is no duty 'imposed by law’, there can be no breach of duty” (People v Lansing Terrace Apts., 70 Misc 2d 44, 48, supra). For *59 this reason alone, the reckless endangerment charge should be dismissed (see, People v Lansing Terrace Apts., supra, at 48).
Even assuming that a legal duty was owed to the victim by the defendants, the evidence does not show that the defendants engaged in reckless conduct under the circumstances of this case. As mentioned above, the defendants’ conduct in striking the complainant cannot serve as the basis for a finding of recklessness since the Grand Jury dismissed the reckless assault.
To sustain an indictment for reckless endangerment in the second degree, the evidence presented to the Grand Jury must establish that the defendants were "aware of and consciously disregarded] a substantial and unjustifiable risk” of serious physical injury to another (Penal Law § 15.05 [3]; § 120.20). The evidence in this case does not support such a finding.
The undisputed evidence establishes that there were at least five persons in the vicinity who witnessed the incident, and that several of the witnesses approached the victim to render assistance or telephoned for aid. One of the defendants’ own companions arrived at the scene before the defendants left. Thus, there was someone at the scene available to render assistance, and who in fact did render assistance. Moreover, a crowd of 20 to 30 people gathered almost immediately, and assistance was rendered to the complainant within five minutes by the police and fire departments. Thus, the circumstances in this case do not support a conclusion that the defendants acted recklessly in leaving the complainant in the roadway (see, People v Northrup, 83 AD2d 737, supra; cf., People v Register, 60 NY2d 270, 277).
People v Kibbe (supra) does not stand for the proposition that leaving an incapacitated person in the roadway constitutes reckless conduct. As noted above, Kibbe involved affirmative acts of recklessness not present in this case. The nature of the omission in Kibbe and the circumstances under which it occurred are also far different. In the case at bar, the defendants’ omission consisted of leaving the injured complainant in the vicinity of other persons who immediately rendered aid. In Kibbe, the complainant was left unattended far from any means of obtaining assistance. The complainant was abandoned in subfreezing temperatures on a rural highway one-half mile from the nearest structure. It was late in the evening, and the highway was not illuminated. Visibility was further obscured by snow on both sides of the highway. *60 Approximately 30 minutes after he had been abandoned in the roadway, the victim was struck and killed by a passing vehicle. Thus, Kibbe involved affirmative acts of recklessness and an omission which is very different in nature from the omission alleged in this case.
In sum, I conclude that the Grand Jury evidence is legally insufficient to support the charge of reckless endangerment in two respects. First, the defendants had no legal duty to render aid or minimize the risk of further injury to the complainant. Inasmuch as the case was charged to the Grand Jury as an omission, the absence of such a duty warrants dismissal of the indictment. Second, under the circumstances of this case, the evidence is insufficient to show that the defendants acted recklessly in leaving the complainant in a trafficked roadway since there is no evidence that their conduct created a substantial risk of serious physical injury to the complainant (see, Penal Law § 120.20; People v Northrup, 83 AD2d 737, supra).
In conclusion, the court notes that it sympathizes with the complainant for the debilitating injuries he has suffered as a result of this tragic incident. The court, observes, however, that the Brooklyn District Attorney assigned the case to one of his most experienced assistants to present to the Grand Jury. After a full and thorough presentation, the Grand Jury declined to vote a true bill on the assault counts, and the evidence does not support a charge of reckless endangerment in the second degree.
Accordingly, the defendants’ motion to dismiss the indictment is granted. The court does not grant leave to re-present. The People may make an application for such a leave if they deem it appropriate and comply with CPL 210.20 (4).